GIDEON-ANDERSON LUMBER COMPANY v. EARL HAYES, L. B. FLETCHER, JIM ACKRIDGE and LONZO ACKRIDGE, Appellants.—156 S. W. (2d) 898.

Division Two, December 16, 1941.

*Wallace Morgan* and *Edward F. Sharp* for appellants.

1086

*Ward & Reeves* for respondent.

■ ELLISON, J.—The appellants suffered an adverse judgment in unlawful detainer below. They had been tenants of a farm in New Madrid County during the calendar year 1940 under a written lease with the owner. He declined to renew the lease for 1941, and rented the land to respondent. Appellants refused to surrender possession and respondent brought this suit. At the circuit court trial appellants offered to prove that in August, 1940, the landowner orally agreed to let them continue as tenants during 1941; and during the first week of the latter year the landowner's authorized agent gave them the same assurance. The trial court excluded the testimony because Sec. 2970, R. S. 1939, Sec. 2583a, Mo. Stat. Ann., p. 4832, pocket part, enacted by Laws Mo. 1935, p. 288, prohibits the admission of such evidence in the circumstances detailed. Appellants contended then, as they do now, that the statute violates Sec. 30, Art. II, Constitution of Missouri. This is the only question on this appeal. They concede that if the statute is constitutional their case must fail.

At the trial they further maintained the statute violated Subsections 17 and 33, Sec. 53, Art. IV of the State Constitution but that assignment was not preserved in their motion for new trial. Also, in the motion for new trial they affirmed the statute contravenes certain cited sections of the Constitution of the United States. But those assignments were not presented during the trial. The statute appears in the chapter on Landlords and Tenants. So far as pertinent here it provides (italics ours):

"In all cases where a tenant holds over after ■ the termination of the time for which the premises were let or leased, under a written contract between the lessor or his agent and the tenant or his agent, in any suit for possession by the party entitled to possession of said premises against such tenant, after the termination of the time for which said premises were let or leased under written contract, *oral evidence shall not be admissible that said lease or letting was renewed or extended, or that a new contract was entered into or substituted for the written contract, but the tenant's right to continued possession or the landlord's right to collect rent on said premises after the termination thereof, shall be established by contract in writing;* . . ."

The substance of the enactment is that where a tenant holds over after the termination of his written lease and is sued for possession by the party entitled thereto, oral evidence of any renewal, extension, substituted or new lease to the tenant shall be inadmissible, and the tenant's right to continued possession must be evidenced by a written contract. In other words, where the original lease was in writing the extending agreement also must be.

Without inquiring into the legal effect of the landlord's alleged oral agreement with appellants in August, 1940, to let them continue as tenants during the year 1941, in view of Sec. 3352, R. S. 1939, Sec. 2695, Mo. Stat. Ann., p. 688, and Sec. 3354, R. S. 1939, Sec. 2967, Mo. Stat. Ann., p. 1835, it is at least true that the alleged oral agreement to the same effect made by the landlord's authorized agent during the first week in January, 1941, was a valid, enforceable contract so far as those statutes are concerned. It was to be performed within less than one year from its date and was not a lease for a longer time than one year. (In this discussion we are *assuming* the agreement was a lease and not a mere indefinite agreement to make a lease.) This latter agreement being valid under Secs. 3352 and 3354, supra, though oral, appellants say Sec. 2970, supra, is unconstitutional in declaring it inadmissible in evidence because it was oral. In other words, appellants contend the statute denied them the right to make and prove a legal contract, as guaranteed by the due process section, Sec. 30, Art. II, Constitution of Missouri. The fact should be borne in mind that Sec. 2970, supra, was enacted in 1935, and had been in force over five years when the alleged oral agreements on which appellants rely were made in 1940 and 1941.

It is fundamental that liberty to contract is one of the rights protected by the due process clause. [State v. Julow, 129 Mo. 163, 172-3, 31 S. W. 781, 782.] But it is equally well established that the right is not absolute and universal. As stated broadly in the texts cited below, the State may restrict the right under the police power for the general welfare, and prescribe the manner in which contracts shall be made. However such restrictions must not be arbitrary or unreasonable and can be justified only by conditions calling for their imposition. [12 C. J., sec. 460, p. 948, sec. 966, p. 1200; 16 C. J. S., sec. 210, p. 615; 11 Am. Jur., sec. 341, p. 1161, sec. 342, p. 1165.]

Supporting the texts are such leading cases as Atlantic Coast Line Rd. Co. v. Riverside Mills, 219 U. S. 186, 202, 55 L. Ed. 167, 31 Sup. Ct. 164, where it was said: ''It is obvious, from the many decisions of this court, that there is no such thing as absolute freedom of contract. Contracts which contravene public policy cannot be lawfully made at all, and the power to make contracts may in all cases be regulated as to form, evidence, and validity as to third persons. The power of government extends to the denial of liberty of contract to the extent

of forbidding or regulating every contract which is reasonably calculated to injuriously affect the public interests.''

In Bayside Fish Flour Co. v. Gentry, 297 U. S. 422, 80 L. Ed. 772, 56 Sup. Ct. 513, the State of California imposed certain statutory regulations on fish canneries and packers. The plaintiff contended they denied it the right to contract for the purchase of fish taken from the high seas. The United States Supreme Court again said: ''Undoubtedly the right to contract, with some exceptions, is a liberty which falls within the protection of the due process clause. . . . Plainly enough, however, that right is not directly interfered with by the legislative provisions in question. Nor, because they may operate indirectly as a deterrent, do they, in the sense of the Constitution, deprive appellant of the liberty of contract. A statute does not become unconstitutional merely because it has created a condition of affairs which renders the making of a related contract, lawful in itself, ineffective.''

Speaking of the constitutionality of the English statute of frauds, 25 R. C. L., sec. 3, ▮▮▮ p. 434, says: ''As the statute does not deprive the parties of the right to contract with respect to the matters therein involved, but merely regulates the formalities of the contract necessary to render it enforceable, and is intended to prevent frauds and perjuries, its constitutionality has never been seriously contested, though the courts have in some instances taken occasion to point to such statutes as illustrative of a class of constitutional statutes regulating the right to contract.''

One of these is Adinolfi v. Hazlett, 242 Pa. 25, 88 Atl. 869, 48 L. R. A. (N. S.) 855, 857, where the Supreme Court of Pennsylvania said: ''While the Legislature may not interfere with the absolute individual right to contract, except on the ground of public policy, it may, of course, regulate the manner in which that right shall be exercised. By way of illustration, it may, for the purpose of preventing fraud and perjury, provide that the contract shall be in writing, or that it shall be placed upon record, in order that all persons who may be affected by it, though not parties to it, shall have notice of it.'' [See also, Republic Iron & Steel Co. v. State, 160 Ind. 379, 66 N. E. 1005, 62 L. R. A. 136, 144; Reigart v. Manufacturers' Coal & Coke Co., 217 Mo. 142, 154, 117 S. W. 61, 63; State ex rel. City of Sedalia v. Public Service Comm., 275 Mo. 201, 208, 204 S. W. 497, 498; Huttig v. Brennan, 328 Mo. 471, 492, 41 S. W. (2d) 1054, 1062.']

We refer to a few of the familiar requirements of Chap. 18, Art. 2, R. S. 1939, and other statutes which we need not cite, calling for written evidence of divers contracts, promises and transactions: certain parol leases, estate and interests otherwise being given effect only as leases or estates at will; to assignments of certain leases; the promise of an executor or administrator to answer for debt or damages out of his own estate; the promise of a person to answer for the debt,

default or miscarriage of another; agreements in consideration of marriage; contracts for the sale of lands, tenements or hereditaments; leases of same for more than one year; agreements not to be performed within one year; authorization of an agent to sell land; contracts for the sale of goods, wares and merchandise for the price of $30 or upward; assignments of wages, statute held constitutional in Heller v. Lutz, 254 Mo. 704, 713, 164 S. W. 123, 125; representations concerning the character, credit, ability, trade or dealings of another; recording or filing chattel mortgages; voluntary gifts; loans of goods or chattels; conditional sales; bulk sales; and assignment of certificates of ownership of motor vehicles, as to which Sec. 8382(c), R. S. 1939, Sec. 7774(c), Mo. Stat. Ann., p. 5193, pocket part, was held mandatory in State ex rel. Conn. Fire Ins. Co. v. Cox, 306 Mo. 537, 268 S. W. 87.

In the instant case the General Assembly in 1935 by statute formulated the public policy reflected in Sec. 2970, supra, and declared that in actions to dispossess tenants holding over after the termination of a written lease the right to continued possession should be established by contract in writing. It is true that under Secs. 3352 and 3354, supra, an oral lease for not longer than one year is valid; and that Sec. 2970 renders such leases invalid, or at least ineffectual, if the tenant be one holding over after the termination of a prior written lease. But the legislative reason for the distinction between the two is easily discernible. An oral lease for a year to a tenant not in possession puts the landowner at no disadvantage; but where the tenant is in possession and refuses to vacate on the ground that his written lease was extended or superseded by an oral contract, the situation is very different. We are warranted in concluding that the statute was enacted to correct a condition and to prevent frauds and perjury. We hold the statute is valid.

Judgment affirmed. All concur.