Lennie S. WATKINS, Sr., Respondent,

v.

**John L. WATTLE, Appellant.**

**No. 10504.**

Missouri Court of Appeals,
Springfield District.

Aug. 5, 1977.

Motion for Rehearing or Transfer
Denied Aug. 26, 1977.

Application to Transfer Denied
Oct. 11, 1977.

706

Wendell W. Crow, Ford, Ford, Crow & Reynolds, Kennett, for appellant.

James E. Reeves, Byron D. Luber, Ward & Reeves, Caruthersville, for respondent.

Before BILLINGS, C. J., and HOGAN and FLANIGAN, JJ.

FLANIGAN, Judge.

This is an action for the unlawful detainer (Chapter 534 V.A.M.S.) of 17.68 acres of agricultural land located in the city of Caruthersville. Plaintiff is the owner of the land. Defendant, who was in actual possession of the land at the time of the institution of the action on April 18, 1972, initially went into possession as a tenant under a written lease with the prior owner Wilks. The action, which originated in magistrate court, was tried in the circuit court without a jury. Although the trial involved additional issues, also resolved in plaintiff's favor, only that portion of the judgment which awarded plaintiff possession is under attack on this appeal by defendant.

Prior to 1971 Wilks and defendant entered into two written leases. Lease 1 was for a term beginning January 1, 1964, and ending December 31, 1974. Lease 2 was for a term beginning January 1, 1975, and "continuing for and during the natural life of lessee [defendant]."

On August 17, 1971,[1] defendant executed and delivered to Wilks a quitclaim deed in which the grantee was Wilks. The deed recited that it was made "for the purpose of releasing all interests of [defendant] under [lease 1] and [lease 2]."

On August 16, 1971, Wilks executed and delivered to plaintiff a general warranty deed in which plaintiff was grantee. This deed was not recorded until August 17, 1971, approximately two hours after the quitclaim deed had been recorded. The land described in both deeds was the same land covered by the two leases.

Five days prior to the institution of this action the plaintiff served upon defendant a written demand for delivery of possession.

Defendant's sole "point relied on" is that the trial court erred in refusing, on the basis of § 441.120, para. 1, V.A.M.S., to receive certain evidence offered by defendant. Plaintiff had objected to the proffered evidence on the basis of the statute. The court, in sustaining the objection, stated that it did so "in view of the statute."

The rejected evidence was to the general effect that plaintiff had a conversation with defendant, prior to the execution of the quitclaim deed, in which plaintiff told defendant that if defendant would sign the quitclaim deed "you can still farm the land as long as I own it." The terms of the oral letting were to be "the same as [defendant] had with Wilks prior to that time." Under lease 1 and lease 2, defendant had agreed to pay Wilks, as lessor, "crop rent in the amount of ¼ of all cotton grown" on the land and "⅓ of all other crops." The rent was to be paid at the time the crops were marketed.

The only witness for plaintiff was plaintiff himself. He testified that the land was wholly within the city limits of Caruthersville. He also testified that the defendant was in possession and had refused the demand to vacate. On cross-examination plaintiff admitted that the land had always been used for agricultural purposes. He also admitted that, in the fall of 1971, he received "the crop rental." This rental was from the cotton crop which defendant, who had remained in possession, harvested and marketed in November 1971.

The testimony concerning plaintiff's receipt of the crop rental in November 1971 was received in evidence without objection and plaintiff's (respondent's) brief in this court understandably concedes its truthfulness.

The scope of appellate review of this action is governed by Rule 73.01 V.A.M.R. as construed in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). This court holds that,

1. The quitclaim deed is dated August 13, 1971, but the acknowledgment shows its date of execution to be August 17, 1971.

under the admitted facts here, § 441.120, para. 1, could not be invoked by plaintiff and that the trial court's reliance upon it constituted an erroneous application of the law. *Murphy*, supra, 536 S.W.2d at 32[1].

Section 441.120 reads:

"*Oral evidence not to show renewal of lease or change—notice to quit.*"

"1. In all cases where a tenant holds over after the termination of the time for which the premises were let or leased, under a written contract between the lessor or his agent and the tenant or his agent, in any suit for possession by the party entitled to possession of said premises against such tenant, after the termination of the time for which said premises were let or leased under written contract, oral evidence shall not be admissible that said lease or letting was renewed or extended, or that a new contract was entered into or substituted for the written contract, but the tenant's right to continued possession or the landlord's right to collect rent on said premises after the termination thereof, shall be established by contract in writing; provided, however, this section shall not prevent a recovery of damages by either party for breach of the written contract.

"2. In all cases of an oral letting or leasing of real property for any agricultural year, tenancy at will or by sufferance, or for less than one year, if either party shall terminate said tenancy in accordance with the provisions of sections 441.050 and 441.-060, in any suit thereafter between said parties, oral testimony shall not be admissible to vary, alter or abrogate, the effect of the notice required and given under sections 441.050 and 441.060, but such notice may be varied, altered or abrogated only by written evidence thereof and bearing an actual date subsequent to the date of the notice provided for in said sections."

Defendant argues that the trial court erred in invoking, at plaintiff's instance, § 441.120, para. 1. Defendant asserts that the statute was inapplicable for three independent reasons. The reasons are: (a) Under the facts here there was no holding over by defendant "after the termination of the

time for which the premises were let or leased"; (b) The statute applies only to oral agreements subsequently entered into by the same persons who were parties to the original written agreement; and (c) The statute may not be invoked by plaintiff because the petition had alleged that the wrongful possession commenced on January 1, 1972, (rather than on the date of the delivery of the quitclaim deed) and plaintiff had accepted rent consisting of his share of the cotton crop which defendant harvested in November 1971.

■ Reason (a), advanced by defendant without citation of authority, is unsound and no bar to the invocation of § 441.120, para. 1. In his argument in support of reason (a) defendant says: "The termination of the time for which the premises were let under [lease 1] was December 31, 1974, and the termination of the time for which the premises were let under [lease 2] was upon termination of natural life of the defendant. Consequently the conclusion is inescapable that the giving of the quitclaim deed was not a 'termination' of the lease as contemplated by the statute."

Defendant's argument, under reason (a) is, then, that there was no holding over by defendant "after the termination of the time for which said premises were let or leased under written contract." This is so, says defendant, because, at the time of the institution of the action (April 18, 1972) the time for which the premises were leased under lease 1 (until December 31, 1974) had not terminated and the time for which the premises were successively leased under lease 2 (defendant's lifetime) had not terminated.

The same argument, in a somewhat different factual situation, was unsuccessfully made in *Walther v. Anderson*, 52 Tex.Civ. App. 360, 114 S.W. 414 (1908). There a Texas statute read in material part: "If any person shall willfully and without force hold over any land, tenements, or other real property *after the termination of the time for which such lands, tenements or other real property was let* to him . . . such

person shall be guilty of forcible entry and detainer."

The lessee, against whom an action for forcible entry and detainer had been brought, argued that the statute was limited to cases where the lease had expired by *efflux of time* and did not apply to a case where a lease had been terminated by the lessor for lessee's violation of a covenant in the lease, which the lease itself authorized.

In rejecting this argument the court said, at pp. 417–418: "We do not think that the language 'after the termination of the time for which such lands were let to him' means anything more than after the termination of the time for which the tenant is entitled to possession under the terms of his lease contract. If the tenant holds over after such right has ceased, either by the expiration of the time named in the contract or by termination of the lease and of the tenant's right of possession thereunder before the expiration of such time, under any contingency upon the occurrence of which it is expressly provided in the contract that the lease shall terminate and the landlord shall have the right to re-enter, such holding would be a 'holding over after the termination of the time for which the premises were let to him.' In the present case, the lease contract should be construed as a letting until December 15, 1910, unless sooner terminated by the landlord for violation by the tenant of any of the covenants of the lease. When such contingency occurred, it 'terminated the time' for which the premises were let as effectively as would the expiration of the time named as the limit of the lease. In the one case, as well as the

other, the tenant's right to the possession ceased, and the landlord's right to re-enter began."

The case at bar does not involve a termination of the lease by reason of lessee's violation of a covenant and the lessor's authorized termination of the lease as a result thereof. However, the time for which defendant was entitled to possession under lease 1 and under lease 2 had terminated by reason of the execution and delivery of the quitclaim deed to Wilks (plaintiff's grantor) on August 17, 1971. The delivery of the quitclaim deed constituted a surrender of the lease [2] and the efficacy of that surrender was not destroyed by the fact that the defendant remained in possession.[3]

Defendant's argument that the statute applies only to cases where a lease has terminated by the passing of time is without merit, under the ruling in *Walther,* supra, where the lessee's rights have terminated by reason of his breach of covenant and the lessor's enforcement of the breach. Where, by agreement of the parties, the interest of the lessee has come to an end by surrender or merger,[4] that development "terminated the time" for which the premises were let as effectively as would the expiration of the time named as the limit of the lease. In the language of *Walther,* "in the one case, as well as the other, the tenant's right to the possession ceased, and the landlord's right to re-enter began."

Acceptance by the landlord of a surrender by the tenant is a termination of the lease, although there are alternative methods, including the efflux of time constitut-

---

**2.** § 432.060. "No leases, . . . in . . . any . . . lands . . . shall at any time hereafter be . . . surrendered, *unless it be by deed* or note in writing signed by the party so . . . surrendering the same . . . or by operation of law."

**3.** "It seems that a conveyance by way of surrender, like most other forms of conveyance at the present time, should operate to transfer the title, irrespective of the grantor's retention of possession. If the tenant, after executing and delivering a deed of surrender, still occupies the premises by permission of the surrenderee he is, it is true, a tenant of the latter, but his

tenancy is not, it seems, under the surrendered lease but is under a new demise." 2 Tiffany, Landlord and Tenant, § 189, p. 1319.

**4.** "For most all practical purposes, however, it is entirely immaterial whether, upon a conveyance of the particular estate to the reversioner, the consequent destruction of the estate be regarded as a result of the fact that the conveyance was intended to take effect as a surrender, or the fact that, both estates being vested in the same person, the particular estate is merged." 2 Tiffany, Landlord and Tenant, § 187, p. 1308.

ing the term and, as in *Walther,* enforcement of a forfeiture. 49 Am.Jur.2d Landlord and Tenant § 990, p. 960. Although, in *Walther,* the lease itself contained provisions for forfeiture, the parties here always had the power to terminate the two leases by mutual agreement. 51C C.J.S. Landlord & Tenant § 90, p. 291.

Defendant's reasons (b) and (c), in support of his contention that the statute is inapplicable, will be considered together. Although § 441.120 has been in effect since 1935, it has not played a role in any reported case factually similar to the one at bar. At least the briefs of counsel have furnished no such authority and the research of this court has uncovered none. Indeed the statute may be unique because research at some depth into laws of other jurisdictions has failed to disclose a foreign counterpart.

In *Gideon-Anderson Lumber Co. v. Hayes,* 348 Mo. 1085, 156 S.W.2d 898 (Mo. 1941), the court discussed § 441.120 and held it to be constitutional. There an unlawful detainer action was brought against tenants who held over after the expiration of a written lease. The lease expired on December 31, 1940, and the tenants offered to prove an oral agreement, made in the first week of 1941, to let them continue as tenants during 1941.

The court considered the relationship of § 441.120, para. 1, to § 432.010[5] and § 432.050.[6]

The court said: "The substance of [§ 441.120, para. 1] is that where a tenant holds over after the termination of his written lease and is sued for possession by the party entitled thereto, oral evidence of any renewal, extension, substituted or new lease to the tenant shall be inadmissible, and the tenant's right to continued possession must be evidenced by a written contract. In

other words, where the original lease was in writing the extending agreement also must be." *Hayes,* at p. 899.

The court said that the alleged oral agreement made during the first week in January of 1941 was a valid enforceable contract so far as §§ 432.010 and 432.050 were concerned. But the court pointed out that the General Assembly in 1935, in enacting § 441.120 "formulated the public policy" reflected in the latter statute "and declared that in actions to dispossess tenants *holding over after the termination of a written lease* the right to continued possession should be established by contract in writing. It is true that under [§ 432.050] and [§ 432.010] an oral lease for not longer than one year is *valid*; and that [§ 441.120, para. 1] renders such leases *invalid,* or at least ineffectual, if the tenant be one holding over after the termination of a prior written lease. But the legislative reason for the distinction between the two is easily discernible. An oral lease for a year to a tenant not in possession puts the landowner at no disadvantage; but where the tenant is in possession and refuses to vacate on the ground that his written lease was extended or superceded by an oral contract, the situation is very different. We are warranted in concluding that the statute was enacted to correct a condition and to prevent frauds and perjury." (Emphasis added) *Hayes,* at p. 900.

The court affirmed the judgment of the trial court in favor of the plaintiff and against the tenants holding over. The plaintiff's right to possession was based upon his right as lessee under a subsequent lease from the common lessor, the landowner.

As used in the following discussion, "original lease" refers to the "written contract"

---

**5.** "No action shall be brought . . . upon any contract made for the sale of lands . . or any lease thereof, for a longer time than one year, or upon any agreement that is not to be performed within one year from the making thereof, unless the agreement upon which the action shall be brought, or some memorandum or note thereof, shall be in writing . . ."

**6.** "All leases . . . in, to or out of any . . lands . . . made . . . by parol, and not put in writing and signed by the parties so making or creating the same, or their agents lawfully authorized by writing, shall have the force and effect of leases or estates at will only . . . ."

specified in § 441.120, para. 1, and "follow-up agreement" refers to the type of agreement concerning which, under § 441.120 para. 1, oral evidence shall not be admissible ("that said leasing or letting was renewed or extended, or that a new contract was entered into or substituted for the written contract.").

Plaintiff relies upon *Hayes* as authority against the validity of defendant's reason (b). It should be noted, however, that *Hayes* is distinguishable from the case at bar in two respects: 1. In *Hayes* the parties to the original lease and the parties to the follow-up agreement were the same. In the case at bar the parties to the original lease were Wilks and defendant, but the parties to the follow-up agreement were plaintiff and defendant. 2. In *Hayes,* after the original lease expired and the holding over began, there was no acceptance of rent by the lessor under the follow-up agreement. Here plaintiff accepted rent in November 1971 from defendant.

It is true, as plaintiff points out, that in *Hayes* the plaintiff, as is the situation here, was not a party to the original lease and § 441.120, by its own language, applies "in any suit for possession by the party entitled to possession of the premises against such tenant" and is not limited to cases where the plaintiff is the lessor in the original agreement. This, of course, is consistent with § 534.260 which makes the remedy of unlawful detainer available to (among others) grantees of a lessor where the lessor himself was entitled to the remedy and the holding over preceded the grant. It is also consistent with § 534.270 which makes the remedy of unlawful detainer available to a grantee where the grant preceded the holding over.

*Hayes* is no authority against the validity of reason (b). In *Hayes* the parties to the original lease and the parties to the follow-up agreement *were* the same and it is defendant's contention here that § 441.120, para. 1, is limited to that situation.

▮ Defendant's position may find support in the following arguments: 1. § 441.120, para. 1, is in derogation of the common law. Statutes of that ilk must be strictly construed. See the many cases collected in Missouri Digest, Vol. 26, Statutes, ⟐239. 2. The general concept of § 441.120, para. 1, is that when two people have demonstrated that it is their personal preference to reduce a land lease to writing, the same people will be deemed to have retained that preference with respect to any follow-up agreement so that any oral follow-up agreement between themselves will not be recognized. By their initial conduct the parties have shown their aversion to oral agreements, *at least with each other.* 3. In discussing the parties to the follow-up agreement, § 441.120, para. 1, refers to "*the* tenant" and "*the* landlord's" and the only tenant and landlord previously mentioned in the statute were the parties to the original lease. 4. The proviso in § 441.120, para. 1, uses the language "either party" as if only two parties were contemplated. The same language, "either party," is used in § 441.120, para. 2, not here immediately involved, and the latter portion of the statute applies "in any suit thereafter between said parties." 5. Oral leases are not per se obnoxious to the law. Some of them are valid. The statute would have been no bar to an oral agreement between plaintiff and a stranger to the original lease. Why should the mere fact that defendant had a prior written agreement (actually two—lease 1 and lease 2) with someone else be a bar to an oral agreement between plaintiff and defendant?

Such arguments in support of reason (b) do not appear to be totally lacking in persuasiveness and, of course, if reason (b) is sound the trial court erred in applying the statute.

However, this court need not and does not rule the validity of reason (b) because, as advanced by reason (c), the plaintiff here, by his conduct with defendant after the surrender of the original lease, is in no position to invoke § 441.120, para. 1.

The giving of the quitclaim deed by defendant to Wilks was a surrender. "[W]here a tenant before the expiration of his term surrenders to the landlord . .

the latter is entitled to the growing crops upon the land and no right or title therein remains in the tenant." 51C C.J.S. Landlord and Tenant § 349, p. 886. Defendant, however, remained in possession after the surrender, harvested the crop, and divided it "as crop rental" with plaintiff.

■ The mere remaining in possession, standing alone, did not create a tenancy. *Millhouse v. Drainage Dist. No. 48 of Dunklin County*, 304 S.W.2d 54, 58[11] (Mo.App. 1957). "[N]o character of tenancy at will (including that of year to year) can arise without *some form of consent*, either express, inferred or implied, on the part of the landlord. The mere holding over by the tenant does not of and in itself create a new tenancy. It only gives the landlord the option to renew the lease. No new term is created until the owner, *in some manner*, recognizes the tenancy as existing. And a short delay in which the landlord does nothing is not necessarily a recognition of a new tenancy. Thus the bare fact that a tenant whose lease has expired has continued in possession for a short time pending a treaty for a further lease does not ipso facto create a new tenancy. There must further be present something which shows or indicates *the assent of the landlord* to the new tenancy." *Millhouse*, supra, 304 S.W.2d at 59.

"When a tenant continues in possession after the termination of his lease, the landlord has an election either to evict him, treat him as a trespasser it is said, or to hold him as a tenant. . . . In order for a tenancy to result from the holding over, the landlord must exercise his election, indicating in some way his consent to the tenancy. *Usually, the consent will be evidenced by the acceptance of rent. . .* " (Emphasis added) 1 American Law of Property, § 3.33, pp. 237–238. Anno. 64 A.L.R. 309.

"Where a tenant enters into possession of farm lands under an oral agreement for an indefinite term, his tenancy at will becomes a tenancy from year to year which may be terminated only by giving written notice to quit at least sixty days before the end of the term, § 441.050, unless by special agreement notice is dispensed with. § 441.070." *McNeill v. McNeill*, 456 S.W.2d 800, 804[1–3] (Mo.App.1970).

The land here involved was used for agricultural purposes. Although located within the city of Caruthersville, it was farm land within the rule stated in the preceding paragraph. *Hammond v. Iliad Amusement Co.*, 234 S.W. 371, 372[1] (Mo.App.1921); *Kroeger v. Bohrer*, 116 Mo.App. 208, 91 S.W. 159 (1905).

■■ Section 534.030 defines three distinct factual situations, or classes, which constitute "unlawful detainer." The first class is the "hold-over tenant" class, the second (added in 1939) is the "hold-over employee" class, and the third is the "intruder class" (wrongful possession, without force, by disseisin). The distinction between the hold-over tenant and the intruder classes is discussed in *Ray v. Blackman*, 120 Mo.App. 497, 97 S.W. 212 (1906), *Barber v. Todd*, 128 S.W.2d 290 (Mo.App.1939), and *Bess v. Griffin*, 234 S.W.2d 978 (Mo.App. 1950). The relationship of landlord and tenant is unnecessary in actions under the "intruder class," but a written demand for possession prior to the institution of the action is necessary in such actions. In actions involving the hold-over tenant class, no demand for possession is necessary but a landlord-tenant relationship must have existed.

■ In this case the plaintiff did *not* proceed under the "hold-over tenant" provisions of § 534.030. He proceeded under the "intruder" provision and gave written notice. The petition, making no allegation of the landlord-tenant relationship, alleged a disseisin "on or after January 1, 1972" which, of course, was after plaintiff had collected the crop rental from defendant. Section 441.120, para. 1, applies only in hold-over tenant situations.

"It has been so often said by appellate courts that the action for unlawful detainer is a special statutory action, summary in its nature, and in derogation of the common law, and must therefore be pursued strictly in accordance with the statutes, that the

citation of authorities so holding would be superfluous." *Y.W.C.A. v. LaPresto,* 169 S.W.2d 78, 79[1] (Mo.App.1943).

May plaintiff, who brought his action under the "intruder" section, successfully invoke § 441.120, para. 1, which is limited to the "hold-over tenant" situation? If the question is answered in the negative,[7] defendant must prevail on this appeal. If reason (b) is valid, defendant must prevail on this appeal. But those questions need not be, and are not, ruled upon because here the plaintiff, by accepting the rent, deprived himself of the benefit of § 441.120, para. 1, if, indeed, he was ever entitled to it. This is so for the reasons expressed in the following paragraph.

*If* plaintiff is right in his contention that § 441.120, para. 1, applies in the case at bar, the plaintiff was the "landlord" in the follow-up agreement. The statute, referring to the landlord in the follow-up agreement, says that "the landlord's right to collect rent on said premises after the termination thereof shall be established by contract in writing." [8] Plaintiff here *did* collect the rent, in defiance of the statute. He now seeks to avail himself of the benefit of the statute after he has evaded its burden. This he cannot do. *Stafford v. McDonnell,* 359 Mo. 925, 224 S.W.2d 951, 955[6] (1949). See also: *Brooks v. Cooksey,* 427 S.W.2d 498, 504[10] (Mo.1968); *Jones v. Linder,* 247 S.W.2d 817, 819[3–6] (Mo.1952); *Willey v. Talkington,* 312 S.W.2d 77, 79, 80[12] (Mo. 1958); *Pointer v. Ward,* 429 S.W.2d 269, 272[2, 3] (Mo.1968); *Emery v. Brown Shoe Co.,* 287 S.W.2d 761[2, 3] (Mo.1956).

It follows that § 441.120, para. 1, should have played no role in this case and the trial court erred in sustaining plaintiff's objection, based upon the statute, to the proffered evidence.

There is no necessity to reach the question of the precise nature of defendant's tenancy under plaintiff. Even if the proffered evidence had been admitted, but not believed, under the evidence which *was* admitted, without objection, and which is conceded to be true by plaintiff, plaintiff was not entitled to possession. If the new tenancy was one from year to year, the necessary steps to terminate it were not taken. If, which need not be decided, there is any vitality in that portion of the proffered evidence which would indicate that the tenancy would terminate upon plaintiff's sale of the land, it is of no moment because plaintiff still owns it.

Defendant on this appeal has not requested an outright reversal but a reversal and remand.

That portion of the judgment awarding plaintiff possession is reversed and the cause remanded for further proceedings consistent with the views expressed herein.

HOGAN, J., concurs.

BILLINGS, C. J., disqualified.

---

7. See *Haumueller v. Ackermann,* 150 Mo.App. 141, 130 S.W. 91 (1910); *Fisher v. Payton,* 219 S.W.2d 293, 295[3] (Mo.App.1949).

8. The right to collect rent under the original lease is, of course, a different matter, protected by the proviso in § 441.120, para. 1.