WALLACE, SAUNDERS, AUSTIN, BROWN & ENOCHS, CHARTERED, Respondents,

v.

James A. RAHM, Appellant.

No. WD 53879.

Missouri Court of Appeals, Western District.

Jan. 27, 1998.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 3, 1998.

Application to Transfer Denied April 21, 1998.

---

Joyce J. Wendel, Rahm, Crawford & Wendel, Carrollton, for appellant.

Arlen L. Tanner, Wallace, Saunders, Austin, Brown & Enochs, Chartered, Kansas City, for respondents.

Before ELLIS, P.J., and HOWARD and RIEDERER, JJ.

ELLIS, Presiding Judge.

On April 11, 1991, a truck driven by Earl Perkins, and owned by Utili–Corp United, Inc., collided with a car driven by Richard Reed in Sedalia, Missouri. The car was owned by Everett Reed, Richard's father, who was a passenger in the vehicle. Richard's brother, Vernon, was also in the car. Sometime thereafter, Everett's insurer, State Farm Mutual Automobile Company (State Farm), paid him $6,372 to cover the property damage to his automobile resulting from the accident.

On May 24, 1991, Everett, Vernon and Richard filed negligence actions in the Circuit Court of Pettis County against Utili–Corp and Perkins. Everett was represented by Appellant, James A. Rahm. Utili–Corp and Perkins were represented by Respondent, the law firm of Wallace, Saunders, Austin, Brown & Enochs.

On September 23, 1991, State Farm sent a letter to Utili–Corp's insurer, St. Paul Fire and Marine Insurance Company (St.Paul), notifying it of State Farm's subrogation rights in the $6,372. On October 2, 1991, St. Paul sent State Farm a letter acknowledging State Farm's subrogation claim.

On October 23, 1992, the parties to the negligence actions reached a settlement agreement under which St. Paul would pay the policy limit of $1,000,000 to the three plaintiffs, of which Everett's share was $170,-000. On November 4, 1992, after discovering that the underlying case had been settled, State Farm sent a letter to St. Paul requesting that they settle the subrogation claim. St. Paul did not respond. As part of the settlement agreement, on December 3, 1992, Everett signed a general release of his rights against Utili–Corp and Perkins, which had been drafted by Respondent. That document stated, *inter alia:*

KNOW ALL MEN BY THESE PRESENTS, that the undersigned, Everett Reed, hereinafter referred to as FIRST PARTY, in consideration of the sum of One Hundred Seventy Thousand Dollars ($170,000), to him in hand paid by Utili–Corp United, Inc. d/b/a Missouri Public Service and Earl Perkins, hereinafter referred to as SECOND PARTIES ... has released, acquitted and discharged and does by these presents release, acquit and discharge said SECOND PARTIES ...

\* \* \*

In further consideration of the payments referenced herein, FIRST PARTY and his attorneys hereby acknowledge the existence of certain liens and encumbrances in favor of State Farm Mutual Automobile Insurance Company, and affirmatively state that such liens either have been satisfied or released, or will be satisfied or released concurrently with the execution of this Release. FIRST PARTY and his attorneys, in further consideration for the payments set forth herein, personally agree to indemnify and hold harmless the defendants, their insurance carriers, and counsel from any claims which might be asserted by any lienholder known or unknown, arising out of the payment of any settlement proceeds by the defendants or their representatives, including the lien referenced herein.

IN WITNESS WHEREOF, each of the undersigned has hereunto set his or her hand and seal, or if a corporation, has caused this Release to be signed by a corporate officer, and the corporate seal to be hereunto affixed this 3rd day of December, 1992.

[Everett W. Reed's Signature]
EVERETT REED, FIRST PARTY
WITNESS:
[Signatures of two witnesses]

Comes now the undersigned as attorney for FIRST PARTY and states that I have read the above and foregoing Indemnifying Release and have explained the consequences of said Release to FIRST PARTY and further state FIRST PARTY understands the consequences of the execution of this release. I hereby further state that any claims for attorneys fees or expenses which I may have against any settlement proceeds have been satisfied from those proceeds, and I hereby waive any claim I may have against SECOND PARTIES for any such lien.

Settlement Approved and
Attorney's Lien Released:
[Appellant's signature]
[Stanley L. White's signature]

In exchange for this release, Respondent gave Appellant a check for $170,000 from St. Paul made out to Everett and Appellant.

On December 9, 1992, after receiving no response from their letter of November 4, State Farm sent another letter to St. Paul, requesting settlement of their subrogation claim. On December 14, 1992, St. Paul informed State Farm that the subrogation claim was supposed to come out of the settlement paid to Everett and Appellant. Thereafter, State Farm notified St. Paul of its intention to hold St. Paul responsible for not protecting State Farm's interests. St. Paul, in turn, looked to Respondent to collect on the subrogation claim. On May 11, 1993, Respondent sent a letter to Appellant inquiring about the subrogation claim. On May 26, 1993, Appellant responded, denying that either he or his client had ever agreed to pay the subrogation claim or that they bore responsibility for that claim because it was "not a lien nor an encumbrance." From July 16 through December 30, 1993, State Farm re-

**422**

peatedly contacted St. Paul seeking status reports on its claim.

On or about June 23, 1994, Respondent discovered that Everett had died on December 13, 1992, and that his estate had closed on September 30, 1993. On May 17, 1995, Respondent gave State Farm a check for $6,372 in exchange for an assignment of State Farm's rights against Everett and Appellant. On August 7, 1995, Respondent filed suit against Appellant for breach of contract in the Circuit Court of Carroll County, claiming that it was entitled to be indemnified by Appellant under the terms of the general release. The cause was heard on January 17, 1997, and on February 3, 1997, the trial court entered judgment in favor of Respondent for $6,372.

On appeal, Appellant argues that the trial court erred in finding that he had agreed to be bound by the terms of the release.[1] He contends that by signing the bottom portion of the release, he only agreed to the terms of the preceding paragraph and not the entire contract. The trial court found while the release could be interpreted that way, it could also be interpreted as binding Appellant to the entirety of the document. The trial court adopted the latter interpretation in holding Appellant liable under the release.

In Missouri, settlement agreements are interpreted under the general rules of contract construction. *Park Lane Medical Ctr. v. Blue Cross*, 809 S.W.2d 721, 724 (Mo. App. W.D.1991). The trial court's construction of a contract involves legal conclusions that are not binding on appeal. *Anchor Centre Partners, Ltd. v. Mercantile Bank*, 803 S.W.2d 23, 32 (Mo. banc 1991). Therefore, our review is *de novo*, and we need not give any deference to the trial court's interpretation of the agreement. *Knipp v. Truck Ins. Exch.*, 857 S.W.2d 281, 284 (Mo.App. W.D. 1993).

"A contract generally binds no one but the parties thereto, and it cannot impose any contractual obligation or liability on one not a party to it." *Continental Casualty Co. v. Campbell Design*, 914 S.W.2d 43, 44 (Mo. App. E.D.1996). An attorney is the agent of his client. *Ingram v. Lupo*, 726 S.W.2d 791, 794 (Mo.App. E.D.1987).[2] "As an agent of the client, an attorney acts as the client's alter ego and not for the attorney personally." *Macke Laundry Serv. Ltd. v. Jetz Serv. Co.*, 931 S.W.2d 166, 176 (Mo.App. W.D.1996). A basic principle of agency law is that an agent is not personally liable for a breach of contract by a disclosed principal absent evidence showing an intent by the agent to be personally obligated under the contract. *Benson Optical Co. v. Floerchinger*, 810 S.W.2d 531, 534 (Mo.App. E.D.1991). The presumption is that the agent intended only that his principal would be bound by the contract, and "an agent will not be bound personally, except upon clear and explicit evidence of an intention to be bound." *Id.* (quoting *Wired Music, Inc. v. Great River Steamboat Co.*, 554 S.W.2d 466, 468 (Mo.App. E.D.1977)). Accordingly, as the agent of his or her client, an attorney is not personally liable under a contract entered into by or for that client unless the attorney expressly agrees to accept liability in clear and unmistakable language. *Sefi Fabricators, Inc. v. Tillim*, 79 Misc.2d 213, 360 N.Y.S.2d 146, 147 (N.Y.Sup.1973).

The use of the phrasing "FIRST PARTY and his attorneys ..." in the indemnification paragraph may well indicate the Respondent's desire, as the drafter of the document, to make Appellant liable under those terms. However, the release does not identify Appellant as a party, nor does it reflect that Appellant agreed to be bound by those terms. Respondent's claim that the language, "Each of the undersigned," can be read to include everyone whose signature

---

1. Appellant presents a number of other arguments on appeal. However, since this issue is dispositive of the appeal, we need not address those contentions.

2. "Traditionally, an attorney's liability for the attorney's professional acts has been governed by the concept of privity, and an attorney is usually not liable for an injury to a nonclient arising out of the representation of a client." *Macke Laundry Serv. Ltd. v. Jetz Serv. Co.*, 931 S.W.2d 166, 176–77 (Mo.App. W.D.1996).

appeared anywhere thereafter in the document is without merit. Accepting the argument at face value, it would mean that the two people who witnessed Everett's signature are parties to the agreement and liable thereunder. There is nothing in the release to even remotely suggest such being the case. Everett was the only one to sign the release as a party.[3] Everett's signature was in turn followed by the signatures of two witnesses. Those signatures were then followed by a paragraph by which Appellant acknowledged that he had explained the consequences of the release to his client, that his client understood those consequences, and that he was releasing any claim he might have for attorney's fees against Utili–Corp or Earl Perkins. Nothing in that final paragraph indicates that it is to be read in conjunction with the earlier portions of the release or that Appellant was to be bound by the terms of the general release. Just as the signatures of the two witnesses merely attested to the fact that they observed Everett signing the document and did not bind them to the terms of the release, *Follman Properties Co. v. John Henry Foster Co. of St. Louis*, 872 S.W.2d 499, 503 (Mo.App. E.D. 1994), Appellant's subsequent signature simply released his attorney's lien and bore witness to the fact that his client understood the terms of the general release. Had Respondent, as the drafter of the release, intended to make Appellant a party thereto, it could have done so very easily by identifying Appellant and Everett as "First Parties," and requiring Appellant's signature with Everett's, following the terms of the general release.[4] Appellant was not made a party to the release, and therefore, is not liable under Respondent's contract theory. *Continental*

*Casualty Co.*, 914 S.W.2d at 44.[5] Accordingly, the trial court erred in finding Appellant liable under the terms of the release.

The judgment is reversed and the cause remanded to the trial court for further proceedings consistent with this opinion.

All concur.

---

**3.** The opening language of the release reads, "Know all men by these presents, that *the undersigned, Everett Reed*, hereinafter referred to as FIRST PARTY, in consideration of the sum of One Hundred Seventy Thousand Dollars ($170,-000), to him in hand paid by Utili–Corp United, Inc. d/b/a Missouri Public Service and Earl Perkins, hereinafter referred to as SECOND PARTIES ..." (emphasis added). The closing language relied on by Respondent was immediately followed by the signature of Everett as the "First Party."

**4.** Moreover, even were we to conclude that the document was ambiguous regarding whether Ap-

pellant was a party to the contract, an agreement that is ambiguous should be construed against the drafter, in this case, Respondent. *Baker v. Whitaker*, 887 S.W.2d 664, 670 (Mo.App. W.D. 1994).

**5.** *See Farmers New World Life Ins. Co. v. Jolley*, 747 S.W.2d 704 (Mo.App. W.D.1988) (holding law firm was not liable under a restitution theory where it merely released its attorney's fee lien and was not made a party to the general release in which client promised to indemnify insurance company.).