

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| JOE D. BROWN, in his Capacity as Successor Trustee of the GEORGE E. HEARD REVOCABLE TRUST, Dated February 24, 2000, | ) ) ) ) | |
| | ) | **WD84279** |
| Respondent, | ) | |
| v. | ) | **OPINION FILED:** |
| | ) | **December 7, 2021** |
| | ) | |
| DOUGLAS LEE BARNES and KYLE BARNES, | ) ) | |
| | ) | |
| Appellants. | ) | |

**Appeal from the Circuit Court of Sullivan County, Missouri**
**The Honorable Terry A. Tschannen, Judge**

**Before Special Division:** Mark D. Pfeiffer, Presiding Judge,
Alok Ahuja, Judge, and Jeff Harris, Special Judge

Mr. Douglas Barnes and Mrs. Kyle Barnes (the "Barneses") appeal from the judgment entered by the Circuit Court of Sullivan County, Missouri ("trial court"), awarding Mr. Joe D. Brown, in his capacity as Successor Trustee ("Trustee") of the George E. Heard Revocable Trust ("Trust"), possession of the real property commonly known and numbered as 29437 Highway T, Milan, Missouri (the "Property"), on his Petition for Unlawful Detainer. The Barneses assert four points on appeal. They contend that the trial court erred in entering summary judgment because

the Trustee failed to prove that the Trust was lawfully entitled to immediate possession of the Property, and the Barneses properly interjected issues with regard to their right of possession (Point One); the Trustee failed to prove that the Trust and the Barneses were in a landlord-tenant relationship and failed to prove that the Barneses were both served with demand for possession in accordance with section 534.050[1] (Point Two); the Trustee failed to prove that the Trust properly terminated the landlord-tenant relationship with both of the Barneses in accordance with section 441.060 (Point Three); and the Trustee's claim for unlawful detainer is barred by the statute of limitations in section 534.300 (Point Four). We affirm. For ease of analysis, we address the Barneses' points on appeal out of order.

**Factual and Procedural Background**[2]

The Trust was the record owner of the Property, which consisted of two contiguous tracts of land in Sullivan County, Missouri. The Property was conveyed to the Trust in May and November 2000 following the Trust's creation. The Barneses resided in a home located on the Property and used the gated driveway to the home that crossed over both parcels. The Trust and the Barneses had no written lease or rental agreement regarding leasing or renting the Property; however, there was an oral agreement that allowed the Barneses to reside in the home in exchange

---

[1] All statutory references are to the REVISED STATUTES OF MISSOURI 2016, as supplemented.

[2] As the Missouri Supreme Court has explained:

- Facts come into a summary judgment record only via Rule 74.04(c)'s numbered-paragraphs-and-responses framework.
- Courts determine and review summary judgment *based on that Rule 74.04(c) record, not the whole trial court record*.
- Affidavits, exhibits, discovery, etc. generally play only a secondary role, and then only as cited to support Rule 74.04(c) numbered paragraphs or responses, *since parties cannot cite or rely on facts outside the Rule 74.04(c) record*.
- To come full circle, "summary judgment rarely if ever lies, or can withstand appeal, unless it flows as a matter of law from appropriate Rule 74.04(c) numbered paragraphs and responses *alone*.

*Green v. Fotoohighiam*, 606 S.W.3d 113, 117 (Mo. banc 2020) (emphasis in original). We have, thus, presented the facts as directed by *Green*.

2

for performing maintenance and upkeep on the Property. There was no writing in existence, recorded or otherwise, that purported to transfer any interest in the Property to the Barneses. Title to the Property has never been conveyed to the Barneses by any form of recorded deed.

On April 19, 2019, the Trust's attorney sent to the Barneses' attorney a letter on behalf of the Trust providing notice that the Barneses must vacate and surrender all real property owned by the Trust within thirty-one days from the date of the letter or on or before May 20, 2019. The Barneses did not vacate and/or surrender the Property to the Trust, and they continued to occupy the residence as well as use the gated driveway to the home.

On May 22, 2019, Trustee filed a petition in unlawful detainer against the Barneses. Summonses were personally served on the Barneses' attorney of record. The Trustee subsequently filed a first and second amended petition in unlawful detainer. On January 8, 2020, the trial court granted Trustee leave to file a third amended petition.

Trustee filed a motion for summary judgment on May 29, 2020, asserting that the Trust was the lawful owner of the Property, that the Barneses occupied the home situated on the Property with the consent of the Trust, that the Barneses failed to vacate the Property after the Trust withdrew its consent via written termination of their tenancy, and that the Trust was entitled to immediate possession of the Property. The Trustee argued that the Trust was entitled to summary judgment as there were no genuine issues of material fact with respect to the Trust's ownership of the Property, as to the Trust's immediate right to possession of the Property, and as to the request for the Barneses to vacate the Property. After hearing arguments of counsel in December 2020, the trial court agreed with the Trustee that there were no genuine issues of material fact that denied the Trust the right to immediate possession of the Property as a matter of law in accordance with Chapter 534. The trial court granted Trustee's motion for summary judgment on January 11, 2021,

3

and ordered that the Trust have restitution of the Property, which the trial court found was unlawfully detained by the Barneses.

The Barneses timely appealed.

**Standard of Review**

The propriety of summary judgment is an issue of law, and our review of a grant of summary judgment is essentially *de novo*. *Doe 122 v. Marianist Province of the U.S.*, 620 S.W.3d 73, 76 (Mo. banc 2021) (citing *ITT Com. Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993)). We "'review the record in the light most favorable to the party against whom judgment was entered.'" *Id*. (quoting *ITT Com. Fin. Corp.*, 854 S.W.2d at 376). "Summary judgment is proper only if the moving party establishes there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Id.* (citing *ITT Com. Fin. Corp.*, 854 S.W.2d at 382; Rule 74.04). "A genuine issue is a dispute that is real, not merely argumentative, imaginary, or frivolous." *Id.* (citing *ITT Com. Fin. Corp.*, 854 S.W.2d at 382).

**Analysis**

**Point II**

In the Barneses' second point, they contend that the trial court erred in granting summary judgment because there was a genuine issue of material fact in that Trustee failed to prove that the parties were in a landlord-tenant relationship. The Barneses also argue that they do not fall under any category covered by the unlawful detainer statute; but if they did fall under a category, there is a genuine issue of material fact as to which category, thereby raising an inference that they are in the wrongful possession class. We disagree.

Section 534.030.1 defines four distinct scenarios under which a person is guilty of unlawful detainer:

4

When any person willfully and without force holds over any lands, tenements or other possessions, [1 – the holdover tenant class] after the termination of the time for which they were demised or let to the person, or the person under whom such person claims; or [2 – the foreclosure class] after a mortgage or deed of trust has been foreclosed and the person has received written notice of a foreclosure; or at least ten business days have elapsed after the date of the notice described in subsection 3 of this section; or [3 – the holdover employee class] when premises are occupied incident to the terms of employment and the employee holds over after the termination of such employment; or [4 – the wrongful possession class] when any person wrongfully and without force, by disseisin, shall obtain and continue in possession of any lands, tenements or other possessions, and after demand made, in writing, for the delivery of such possession of the premises by the person having the legal right to such possession, or the person's agent or attorney, shall refuse or neglect to vacate such possession, such person is guilty of an **"unlawful detainer"**.

*See Kocina v. Johannes*, 505 S.W.3d 474, 477 (Mo. App. W.D. 2016).

In *McNeill v. McNeill*, 456 S.W.2d 800 (Mo. App. 1970), the court defined the relationship of landlord and tenant:

In simplest terms, the relationship of landlord and tenant is defined as that which arises from a contract, express or implied, by which one person occupies the real property of another with his permission and in subordination to his rights, the occupant being known as the "tenant" and the person in subordination to whom he occupies as the "landlord." Such contract may be implied from "slight evidence," "as from a permissive holding"; and, although usually incident thereto, reservation of rent by the owner is not essential to creation of the landlord-tenant relationship.

*Id*. at 804-05 (footnotes omitted) (citations omitted). There was no written lease or rental agreement between the Trust and the Barneses regarding leasing or renting the Property; however, there was undisputedly an oral agreement that permitted the Barneses to occupy the Property in exchange for performing maintenance and upkeep on the Property. Similarly, in *Phelps v. Phelps*, 299 S.W.3d 707 (Mo. App. S.D. 2009), a property owner filed an unlawful detainer action against her son and daughter-in-law, who had lived in a farmhouse owned by the son's mother for almost twenty-five years with no formal lease. *Id*. at 708. The court rejected the son and daughter-in-law's argument that their possession was not as tenants because the son's mother had allegedly orally agreed to convey the farm to son in return for his performing remodeling work on

5

her other property. *Id*. at 709-10. The court determined that the son and daughter-in-law's occupancy of the property with mother's consent was sufficient to create a landlord-tenant relationship. *Id*. Here, the record reflects that the Trust was the record owner of the Property, and the Barneses occupied the Property with the consent of the Trust; therefore, the Trust and the Barneses had a landlord-tenant relationship.

The Trust withdrew its consent to the Barneses' tenancy as evidenced by the Trust's attorney's April 19, 2019 letter sent to the Barneses' attorney on behalf of the Trust providing notice that the Barneses must vacate and surrender all real property owned by the Trust within thirty-one days from the date of the letter or on or before May 20, 2019. As of May 20, 2019, the landlord-tenant relationship terminated, bringing the Barneses within the holdover tenant class of section 534.030.1.

The Barneses also aver that Trustee failed to prove both Mr. Barnes and Mrs. Barnes were properly served with the notice of termination of their wrongful possession class tenancy under section 534.030.1. The "wrongful possession class" scenario is defined in section 534.030.1 as "wrongfully and without force" obtaining and continuing in possession after demand made, in writing, for the delivery of such possession. "The relationship of landlord and tenant is unnecessary in actions under the 'intruder class [(wrongful possession, without force, by disseisin)],' but a written demand for possession prior to the institution of the action is necessary in such actions." *Watkins v. Wattle*, 558 S.W.2d 705, 712 (Mo. App. 1977). The "wrongful possession class" scenario is not applicable to this case because, as we have determined, the Trust and the Barneses had a landlord-tenant relationship. "In actions involving the hold-over tenant class, no demand for possession is necessary but a landlord-tenant relationship must have existed." *Id*. Even though not required under *Watkins*, the Trust, as the record owner of the Property, gave

the Barneses notice to vacate and surrender the Property thirty-one days from the date of the notice. However, the Barneses refused to vacate and surrender the Property to the Trust.

The trial court did not err in granting summary judgment because there were no genuine issues of material fact in that the Trust and the Barneses were in a landlord-tenant relationship, and the Barneses were properly given notice of the termination of their tenancy (as we discuss in our analysis of Point III).

Point II is denied.

**Point III**

In the Barneses' third point, they assert that the trial court erred in granting summary judgment because there was a genuine issue of material fact in that Trustee failed to prove that the Trust properly terminated the landlord-tenant relationship with both of the Barneses in accordance with section 441.060.

The Trust and the Barneses had no written lease or rental agreement regarding leasing or renting the Property; however, there was undisputedly an oral agreement that allowed the Barneses to reside on the Property in exchange for performing maintenance and upkeep. Therefore, under section 441.060.3, the parties' oral agreement created a tenancy from month to month, subject to one month's notice of termination:

> Except as otherwise provided by law, all contracts or agreements for the leasing, renting or occupation of . . . houses, tenements or other buildings in cities, towns or villages, . . . not made in writing, signed by the parties thereto, or their agents, shall be held and taken to be tenancies from month to month, and all such tenancies may be terminated by either party thereto, or the party's agent, giving to the other party, or the party's agent, one month's notice, in writing, of the party's intention to terminate such tenancy.

The Trust complied with the statute. On April 19, 2019, the Trust's attorney sent to the Barneses' attorney a letter on behalf of the Trust providing notice that the Barneses must vacate and surrender

7

all real property owned by the Trust within thirty-one days from the date of the letter or on or before May 20, 2019.[3]  In fact, the Barneses concede that the Barneses' attorney forwarded the April 19 notice-to-vacate letter to them and it was received by Mrs. Barnes on April 22, 2019.

The trial court did not err in granting summary judgment because there were no genuine issues of material fact in that the Trust properly terminated the landlord-tenant relationship with the Barneses in accordance with section 441.060.3.

Point III is denied.

## Point I

In the Barneses' first point, they assert that the trial court erred in granting summary judgment because there was a genuine issue of material fact in that Trustee failed to prove that the Trust was entitled to immediate possession of the Property.

Section 534.200 limits the substantive scope of unlawful detainer actions by providing that "[t]he complainant shall not be compelled to make further proof of the forcible entry or detainer than that he was lawfully possessed of the premises, and that the defendant unlawfully entered into and detained or unlawfully detained the same."  This fundamental limitation is underscored by section 534.210, which states:  "The merits of the title shall in nowise be inquired into, on any complaint which shall be exhibited by virtue of the provisions of this chapter."  Sections 534.200

---

[3] "The attorney-client relationship is an agency one, and is governed by principles applicable to agency relationships." *Kline v. Bd. of Parks & Recreation Comm'rs*, 73 S.W.3d 63, 67 (Mo. App. W.D. 2002). "In agency relationships in general, notice to the agent while acting within the scope of his authority and with regard to any business over which his authority reaches, is notice to, or knowledge of, the principal." *Id.* (internal quotations marks omitted). Therefore, "where a client employs a lawyer to represent the client in a particular matter, knowledge of the lawyer about the matter, acquired in the course of the lawyer's employment, is generally imputed to the client." *Id.* (internal quotation marks omitted). *See also Wallace, Saunders, Austin, Brown & Enochs, Chartered v. Rahm*, 963 S.W.2d 419, 422 (Mo. App. W.D. 1998) ("An attorney is the agent of his client."); *State v. Licata*, 501 S.W.3d 449, 453 (Mo. App. W.D. 2016) ("The attorney-client relationship is one of agent-principal. The general rule is that notice to an agent while acting within the scope of his authority and with regard to any business over which his authority reaches, is notice to, *or knowledge of* the principal." (citation omitted)). Accordingly, here, notice to vacate the premises provided to the Barneses' attorney on April 19, 2019, served as notice to the Barneses as of that date.

and 534.210 prohibit a defendant from attacking the validity of a plaintiff's title, equitable or otherwise, whether the attack is by affirmative defense, counterclaim, or otherwise. *Wells Fargo Bank, N.A. v Smith*, 392 S.W.3d 446, 460 (Mo. banc 2013). "[S]tatutory unlawful detainer actions do not, cannot, and never were intended to resolve questions of ownership or the validity of title. Instead, these actions resolve only the immediate right to possession and, then, only between the parties to the case." *Id.* at 456.

"The central issue in an unlawful detainer case is possession, not title." *Id*. at 461. While courts "understand the potential tension between bare evidence of ownership affording an immediate right to possession through the summary remedy of unlawful detainer and equitable claims that ownership has been procured through an invalid or unlawful process, the legislature has drawn a bright line of demarcation between these concepts." *Id*. at 462 (quoting *State ex rel. Deutsche Bank Nat'l Trust Co. v. Chamberlain*, 372 S.W.3d 24, 31 (Mo. App. W.D. 2012)). Here, the general warranty deeds to the Trust evidence the Trust's ownership of the Property and its immediate right to possession, a right Trustee is expressly permitted to enforce in an unlawful detainer action.[4] *See id.*

The Barneses also argue that they "properly interjected issues in regard to their right to possession of the property" to defeat Trustee's motion for summary judgment based on their claim that they "have raised a material fact that George E. Heard promised to gift them the [P]roperty due to labor and funds they had expended."[5] The Barneses rely upon *I-70 Mobile City, Inc. v.*

---

[4] The Barneses argue that the May 16, 2000 general warranty deed that transferred one tract of the Property from Mr. and Mrs. Heard to the Trust was not properly notarized, as the notary's commission was expired at the time the deed was executed, and therefore, was "a material fact at issue in relation to who is entitled to immediate possession of the [P]roperty." This argument is meritless, as the notary's seal expressly states that her commission did not expire until 2003.

[5] We note that the statute of frauds provides:

No action shall be brought . . . upon any contract made for the sale of lands, tenements, hereditaments, or an interest in or concerning them, or any lease thereof, for a longer time than one

*Cartwright*, 595 S.W.3d 161 (Mo. App. W.D. 2020), to support their argument; however, their reliance on *Cartwright* is misplaced. The *Cartwright* court held that "counterclaims and affirmative defenses are not procedurally barred *per se* but rather barred only if they exceed the limitations of 534.200 and 534.210." *Id*. at 164 (citing *Wells Fargo*, 392 S.W.3d at 455). "These statutes . . . create a substantive 'prohibition against a defendant raising equitable defenses and/or challenges to the validity of the plaintiff's title in an unlawful detainer action.'" *Id.* (quoting *Wells Fargo*, 392 S.W.3d at 455). The *Cartwright* Court explained that counterclaims and affirmative defenses in unlawful detainer actions:

> are permitted only to the extent that they comply with all other chapter 534 provisions, including section 534.200, which makes the sole issue in unlawful detainer actions "the immediate right of possession." Thus, critically, while the *Wells Fargo* Court clarifies that section 534.200 presents a substantive limitation, as opposed to a procedural limitation, its decision does not explicitly overrule prior courts' interpretation of the statute—that all other claims must be dismissed and raised in a separate action unless such claims depend solely on the right to possession.

*Id*. at 167 (citation omitted). The Barneses' claim that they were entitled to possession of the Property because Mr. Heard promised to gift, or orally did gift, them the Property due to the labor and funds they had expended is an assertion of a superior claim of title and a challenge to the Trust's title, which is not cognizable in an unlawful detainer action.

---

year, or upon any agreement that is not to be performed within one year from the making thereof, unless the agreement upon which the action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or some other person by him thereto lawfully authorized, and no contract for the sale of lands made by an agent shall be binding upon the principal, unless such agent is authorized in writing to make said contract.

§ 432.010. An oral agreement to convey property falls squarely within the statute of frauds and will not be enforced at law. *Barkho v. Ready*, 523 S.W.3d 37, 43 (Mo. App. W.D. 2017). Additionally, in an unlawful detainer case where the property owner had allegedly orally promised to convey farm property to her son in return for his remodeling work on other property, the court held that "equitable defenses [based on an alleged oral agreement] are not cognizable in an unlawful detainer action." *Phelps v. Phelps*, 299 S.W.3d 707, 709 (Mo. App. S.D. 2009).

The trial court did not err in granting summary judgment because there were no genuine issues of material fact in that the Trust was entitled to immediate possession of the Property, and the Barneses did not properly interject issues regarding their alleged right to possession.

Point I is denied.

**Point IV**

In the Barneses' fourth point, they assert that the trial court erred in granting summary judgment because there was a genuine issue of material fact in that Trustee's claim for unlawful detainer was barred by the statute of limitations in section 534.300.

Section 534.300 bars an unlawful detainer action against a person who has continuously occupied premises for three years:

> The provisions of this chapter shall not extend to any person who has had the uninterrupted occupation or been in quiet possession of any lands or tenements for the space of three whole years together, immediately preceding the filing of the complaint, or who has continued three whole years in the peaceable possession after the time for which the premises were demised or let to him, or those under whom he claims, shall have expired.

"However, a landlord-tenant relationship makes RSMo § 534.300 inapplicable." *Phelps*, 299 S.W.3d at 710 (citing *F.A. Sander Real Estate & Inv. Co. v. Becker*, 202 S.W.2d 549, 551 (Mo. App. 1947)). While "[t]he limitations clock does not run during a tenancy because such possession is not adverse to the landowner":

> [a]t the expiration of a lease, it is the tenant's duty to surrender the premises, and when his time expires, he becomes an unlawful detainer. The tenant's uninterrupted possession is "by and with the consent" of the landlord. At the point the landlord-tenant relationship terminates, the tenant's possession thereafter is adverse, which triggers the running of the three-year period described in § 534.300.

*Id*. (quoting *P.M. Constr. Servs., Inc. v. Lewis*, 26 S.W.3d 284, 290 (Mo. App. W.D. 2000)). "'Section 534.300 is a statute of limitations that does not commence to run until there is an

11

unlawful detainer.'" *Id*. (quoting *JP Morgan Chase Bank v. Tate*, 279 S.W.3d 236, 239 (Mo. App. E.D. 2009)).

The Barneses' occupation of the Property became adverse to the Trust when they refused to vacate and surrender the Property within thirty-one days from the date of the Trust's attorney's letter or on or before May 20, 2019. The three-year statute of limitations was not triggered until the Barneses refused to vacate and surrender the Property on May 20, 2019. The Trust filed suit two days later on May 22, 2019, well within the three-year statute of limitations.

The trial court did not err in granting summary judgment because there were no genuine issues of material fact in that the Trust's action for unlawful detainer was not barred by the statute of limitations in section 534.300.

Point IV is denied.

### Conclusion

The trial court's judgment is affirmed.

/s/ *Mark D. Pfeiffer*

Mark D. Pfeiffer, Presiding Judge

Alok Ahuja, Judge, and Jeff Harris, Special Judge, concur.