**WELLS FARGO BANK, N.A., as trustee for the benefit of the certificate holders, Park Place Securities, Inc., asset-backed pass-through certificates Series 2005–WCW2, Respondent,**

v.

**William D. and Susan M. SMITH, Appellants.**

**No. SC 92649.**

Supreme Court of Missouri, En Banc.

Argued and Submitted Jan. 3, 2013.

Decided March 19, 2013.

John Campbell, Erich Vieth, Simon Law Firm, Alicia Campbell, Campbell Law LLC, St. Louis, MO, for Smiths.

Thomas C. Walsh, Louis F. Bonacorsi, John J. Schoemehl, Bryan Cave LLP, St. Louis, MO, Benjamin C. Struby, Millsap & Singer, St. Louis, MO, for Wells Fargo.

PAUL C. WILSON, Judge.

William and Susan Smith lost their home in a foreclosure sale. When they failed to vacate, the foreclosure purchaser, Wells Fargo, sued for unlawful detainer. The circuit court granted summary judgment to Wells Fargo, and the Smiths appeal. The Smiths argue that, because sec-tion 534.210, RSMo,[1] is unconstitutional, summary judgment was improper and the case should be remanded for consideration of their equitable defenses and counter-claims concerning the validity of Wells Fargo's title. Section 534.210 is not un-constitutional and, because the Smiths failed to raise a genuine issue of fact con-cerning Wells Fargo's right to possession, the judgment is affirmed.

## I. Background

The Smiths purchased their home in 2005 using, in part, the proceeds of a $100,000 loan from Argent Mortgage Com-pany. The Smiths executed a promissory note to Argent and a deed of trust contain-ing a power of sale authorizing the trustee, after notice to the Smiths, to foreclose and sell the home in the event of an uncured default on the promissory note.

In 2010, a successor trustee published notice that the Smiths' home would be sold in foreclosure and sent the Smiths notice of the sale by registered mail. The sale occurred on February 23, 2010, at which Wells Fargo purchased the property. When the Smiths failed to vacate their home after receiving notice to do so, Wells Fargo sued the Smiths for unlawful detain-er on March 29, 2010, in the associate circuit division of the circuit court of Jef-ferson County.

Wells Fargo alleged that it purchased the Smiths' home at a trustee's sale and that it was entitled to immediate posses-sion of the same.[2] Wells Fargo also al-

---

1. Unless otherwise noted, all statutory refer-ences are to RSMo Supp.2012.

2. The Smiths contend that Wells Fargo is not the beneficiary of their deed of trust because it cannot produce the original Argent promis-sory note. As explained herein, however, Wells Fargo's standing to bring this unlawful detainer action stems solely from the fact that it purchased the property at the foreclosure sale. Any other relationship it may have with the Smiths is irrelevant. The only question to which Wells Fargo's status as beneficiary of the deed of trust might have been relevant is the Smiths' argument that the grantor on Wells Fargo's trustee's deed had no interest in the property to convey. However, as ex-plained in section VII below, the Smiths lost this argument in a separate case and may not re-litigate it here.

leged that the Smiths were the former owners of the property, that they had executed the deed of trust pursuant to which the foreclosure sale occurred, and that the Smiths remained in unlawful and wrongful possession of the premises despite written demand to vacate.

The Smiths filed an answer in which they denied Wells Fargo's allegations. In their answer, the Smiths also asserted 31 individual affirmative defenses. Rather than recite them verbatim, the following is the description of their self-styled "affirmative defenses" provided by the Smiths in this Court:

> Plaintiff lacked standing; Plaintiff was not the real party in interest; Plaintiff lacked the original promissory note; Plaintiff could not establish chain of title; No proper chain of title existed; Plaintiff did not have the power to authorize the trustee's sale of the property; The trustee was not empowered to sell the property; The foreclosure was illegal; Plaintiff cannot show that the Smiths owed their bank money at the time of the foreclosure; The foreclosure was void because the note was split from the deed of trust; Plaintiff had unclean hands; Plaintiff is not a bona fide purchaser, and [the Smiths] were victims of fraud.

(App. Br. at 14 (citing L.F. 14–20).)

The Smiths also asserted four counterclaims. First, the Smiths sought actual and punitive damages because Wells Fargo had been negligent in purchasing foreclosure properties (including the Smiths' home) it knew, or should have known, had been improperly foreclosed upon, causing the Smiths "economic and emotional" injuries. Second, the Smiths sought actual and punitive damages because Wells Fargo acquired title to the Smiths' home "unjustly" and it would be "unjust for [Wells Fargo] to retain the subject property or to evict [the Smiths] from the property." Third, the Smiths sought actual damages because erroneous charges had been added to their loan balance, their escrow fund was not accurate, and Wells Fargo (or its predecessors) had not given the Smiths "full credit" for all payments. Finally, the Smiths sought declaratory judgments that (a) Wells Fargo does not have valid title to the property, (b) the foreclosure and sale of their home was invalid, (c) Wells Fargo is not a bona fide purchaser for value, and (d) the Smiths have the right to "assert applicable affirmative defenses and counterclaims." (L.F. 20–23.)

Wells Fargo moved to dismiss the Smiths' 31 "affirmative defenses" and four counterclaims on the ground that they exceeded the statutory scope of issues that may be litigated in an unlawful detainer action under section 534.210. The associate division granted this motion, citing *Central Bank of Kansas City v. Mika*, 36 S.W.3d 772, 774 (Mo.App.2001) (issues "relating to title or matters of equity, such as mistake, estoppel and waiver cannot be interposed as a defense" to an unlawful detainer action) (quotation marks omitted).[3]

Wells Fargo also moved for summary judgment on its unlawful detainer claim. The Smiths responded to Wells Fargo's statement of uncontroverted material

---

**3.** Several of the Smiths' self-styled "affirmative defenses" were not affirmative defenses at all, and the balance were improper for other reasons, including that the Smiths failed to allege facts to support them. *See* Rule 55.08 ("an affirmative defense or avoidance *shall contain* a short and plain statement of the facts showing that the pleader is entitled to the defense or avoidance") (emphasis added). However, no survey of these alternative grounds is necessary because the substantive limitations of sections 534.200 and 534.210 are constitutional and preclude these "defenses."

facts, and filed their own "additional statement of uncontroverted material facts" that they contend proves Wells Fargo's title was invalid for the reasons set forth in their affirmative defenses and counterclaims. On September 15, 2011, the associate division entered judgment for Wells Fargo, awarding both immediate possession of the property and damages as provided in sections 534.310 and 534.330. The Smiths vacated the home, but sought a trial *de novo* pursuant to sections 534.380 and 512.180.

In the *de novo* proceedings on Wells Fargo's unlawful detainer claim, Wells Fargo again moved for summary judgment. The Smiths responded to Wells Fargo's statement of uncontroverted material facts and, again, filed their "additional statement of uncontroverted material facts" pertaining to the issues raised in their affirmative defenses and counterclaims. Wells Fargo responded to the Smiths' "additional statement" but also moved to strike that pleading, citing *Central Bank of Kansas City v. Mika.*

On May 12, 2012, more than two years after this "summary" unlawful detainer action began, the court granted summary judgment to Wells Fargo. The Smiths appeal, and, because they challenge the validity of section 534.210, this Court has exclusive appellate jurisdiction pursuant to article V, section 3 of the Missouri Constitution.

Also worthy of note are two related lawsuits brought by the Smiths and one lawsuit the Smiths failed to file. First, in April 2012, the Smiths sued Wells Fargo in the Jefferson County circuit court alleging wrongful foreclosure and various other claims.[4] Their wrongful foreclosure suit raises the same issues—and seeks the same relief—that the Smiths tried to raise by way of affirmative defenses and counterclaims in Wells Fargo's unlawful detainer action. Despite the fact that they filed their wrongful foreclosure case *before* judgment was entered in Wells Fargo's unlawful detainer action, the Smiths never asked the wrongful foreclosure court to stay the unlawful detainer matter so that their wrongful foreclosure claims could be determined first.

Second, in August 2011, the Smiths filed a "Petition for Reformation of Judgment, Nunc Pro Tunc, Declaratory Judgment, Injunctive and Related Relief" against Wells Fargo in Jefferson County circuit court. That action sought to reform the judgment entered in a 2007 action between these same parties arising out of an earlier foreclosure and sale of the Smiths' home. Because Wells Fargo had determined that this foreclosure was improper, it filed the 2007 action to rescind the sale and restore the *status quo ante.* The 2007 action culminated in a judgment declaring that, after rescinding the sale, the Smiths owned the home in fee simple subject to the first lien interest held by Wells Fargo as the beneficiary of the Smiths' deed of trust. The Smiths agreed to the 2007 judgment before it was entered and did not appeal from it. Yet, in August 2011, the Smiths sued Wells Fargo to "reform" this 2007 judgment by removing the declarations concerning Wells Fargo's lien and its status as the current beneficiary of the Smiths' deed of trust. In their reformation case, unlike their wrongful foreclosure suit, the Smiths asked the circuit court to stay Wells Fargo's unlawful detainer action. This request was denied, however, and the Smiths sought no review of that

---

4. Because the Smiths' wrongful foreclosure case remains pending, nothing in this opinion should be taken as expressing any view on the merits of those claims or the remedies being sought.

decision. Following an evidentiary hearing on the Smiths' reformation claims, the court dismissed those claims with prejudice. Again, the Smiths did not appeal.

Finally, despite the bevy of actions between the Smiths and Wells Fargo, one action the Smiths did *not* file was an action to enjoin the 2010 foreclosure sale of their home. The Smiths admit that they received prior written notice of the sale, and do not identify any legal or practical impediment that they claim prevented them from raising their various claims and defenses *before* the sale occurred. Yet, the Smiths did not seek such protection and, instead, waited until the foreclosure purchaser sued them for unlawful detainer before raising these issues.

## II. Issues of Preservation and Finality

■ Before addressing the merits of the Smiths' appeal, the Court must assure itself that it has appellate jurisdiction and that the Smiths' arguments were properly preserved for appellate review. During the trial *de novo* proceedings on Wells Fargo's unlawful detainer claim, the Smiths made no effort to re-assert the affirmative defenses and counterclaims that the associate division dismissed prior to its September 2011 judgment for Wells Fargo. Therefore, unless the Smiths' responsive pleadings were restored *automatically* to their original, pre-dismissal status by the trial *de novo* process, the Smiths' failure to re-assert these affirmative defenses and counterclaims in circuit court would prevent this Court from addressing them on appeal. *See Fannie Mae v. Truong*, 361 S.W.3d 400, 404–05 (Mo. banc 2012) (appellate courts have no jurisdiction to review actions of the associate division in unlawful detainer actions and may only review actions taken by the circuit court on trial *de novo* ).

■ On the other hand, if the Smiths' counterclaims and affirmative defenses were restored automatically in the trial *de novo*, Wells Fargo took no action to have the circuit court dispose of them. More important, nothing in the circuit court's May 2012 judgment explicitly resolved the Smiths' counterclaims. Ordinarily, a judgment that does not dispose of a counterclaim is not a "final judgment" for purposes of appeal. *See Buemi v. Kerckhoff*, 359 S.W.3d 16, 20 (Mo. banc 2011) ("final judgment is defined as one that resolves all issues in a case, leaving nothing for future determination") (citations omitted).

However, neither the jurisdictional requirement of a final judgment nor concerns regarding preservation of the issues presents an insuperable barrier to a substantive resolution of the issues raised in the Smiths' appeal. Instead, it seems clear that both parties and the court proceeded throughout the trial *de novo* as though the associate division's disposition of the Smiths' affirmative defenses and counterclaims had been adopted by the circuit court. For example, in its motion for summary judgment during the *de novo* proceedings, Wells Fargo argued that section 534.210 prohibited the Smiths from asserting any equitable defenses and counterclaims. (L.F. 434.) And, in responding to Wells Fargo's motion, the Smiths argued that *"[a]s the process stands now,* [the Smiths] are not able to raise counterclaims, affirmative defenses, or bring in evidence to support [their] position[, and these] limitations violate both the Equal Protection Clause and Due Process Clause of the United States and Missouri Constitutions." (L.F. 491 (emphasis added).)

Accordingly, this Court concludes that the associate division's disposition of the Smiths' affirmative defenses and counterclaims under section 534.210 was adopted by the court in the trial *de novo* and implicitly incorporated into the May 2012 judgment. *See Glick v. Glick*, 372 S.W.2d 912, 915 (Mo.1963) ("if the judgment by implication necessarily carries with it a

finding upon the counterclaim it will be sustained as final even though the counterclaim is not mentioned") (citations omitted); *Walker v. Anderson*, 182 S.W.3d 266, 268 n.8 (Mo.App.2006).

## III. The Nature and Purpose of Statutory Unlawful Detainer Actions

As set forth below, each of the Smiths' attacks on the constitutional validity of section 543.210 is based upon a fundamental misconception regarding statutory unlawful detainer actions. Accordingly, a review of the history of these claims is necessary to an understanding of their nature and purpose. This history, in turn, informs the Court's analysis and conclusions.

Unlawful detainer actions first were recognized here in the territorial laws, before the State of Missouri was created. Predecessors of this cause of action, however, have existed for almost 900 years. To be sure, the longevity of a practice does not—by itself—resolve the question of whether that practice comports with the requirements of due process. *See* Note, *A Pedigree for Due Process? Burnham v. Superior Court of California*, 56 Mo. L.Rev. 353 (1991) (discussing the extent to which a settled practice should, on that fact alone, be found to comport with due process). Even so, the Smiths' attack on the limited scope and summary nature of statutory unlawful detainer claims must overcome a strong presumption of constitutionality in light of the fact that such actions are not merely older than—but several times as old as—either of the constitutions they supposedly violate.

From the earliest days of the common law, a party entitled to possession of real property might use self-help, including force, to oust anyone wrongfully in possession. *Krevet v. Meyer*, 24 Mo. 107, 110–11 (1856) (en banc). Such uses of force often provoked forceful responses, particularly (though not exclusively) from those who believed they were rightfully in possession of the property. Accordingly, the courts of King Henry II circa 1166 began to recognize that "a method of quickly, forcefully and judicially restoring people to the peaceful possession of their land was a great advantage for the public order[.]" Van Caenegem, *The Birth of the Common Law* (Cambridge Univ. Press 1973), at 40–41.

From the outset, however, such actions were confined to the question of possession and did not purport to address questions of ownership or validity of title. "Leaving aside the intricate question of the greater right, or ownership as we might say now, [the writ of *novel disseisin*] aimed at quickly undoing recent unwarranted disturbances of seisin [possession], carried out unjustly and without judgment." *Id.* at 44 (quotation marks omitted). Thus, claims regarding the validity of title or ownership were excluded and had to be raised in a separate action. *Id.* ("people had known for centuries that seisin and right—*posseessio* and *proprietas* being the corresponding Roman notions—were two different things and that measures concerning seisin *could be followed by litigation on right* ") (emphasis added).

Over the intervening centuries, unlawful detainer actions have been recognized in nearly every time and place influenced by the English common law. In Missouri, the first unlawful detainer statute was enacted in 1813 by the General Assembly of the territory of Missouri.[5] *See Laws of State of Missouri—Vol. I* (W. Lusk & Songs,

---

5. This history is discussed in Robert Sweere, *The No Counterclaim Rule in Unlawful Detainer Proceedings*, 68 J. Mo. B. 162, 168 (2012).

1842), pp. 268–72 (Chapter 92, "Forcible Entry and Detainer"). Broader than the original common law writ, this territorial law provided that a plaintiff with the right to possess certain property could bring an action against a defendant who (1) had dispossessed the plaintiff by force *(i.e.,* "forcible entry"), or (2) began possession lawfully but remained on the land wrongfully after their possessory right ended *(i.e.,* "unlawful detainer"). *Id.*

From its inception, Missouri's unlawful detainer statute incorporated the substantive limitations of such actions that had been a part of the original writ. The territorial legislature provided that an unlawful detainer plaintiff need only prove "that he was lawfully possessed of the premises, and that the defendant unlawfully entered into or detained the same from him or them." *Id.* at 268. And, to ensure that unlawful detainer actions determined only questions of possession, the statute instructed: "[N]or shall any [unlawful detainer] judgment be a bar to any other action at law, brought by either party, *either to try the right of the property or for intermediate damages'* " *Id.* at 269 (emphasis added).

Therefore, even before Missouri became a state, Missouri law recognized that claims for unlawful detainer do not—and cannot—determine ownership of, or validity of title to, real property. *Id.* It was equally clear from the beginning that any claims regarding the validity of title or seeking damages related to invalid assertions of title must be brought in a separate action.

These limitations on the substantive scope of Missouri's unlawful detainer actions find current expression in section 534.200, RSMo, which provides: "The complainant shall not be compelled to make further proof of the forcible entry or detainer than that *he was lawfully possessed* [ [6] ] *of the premises,* and that the *defendant unlawfully* entered into and detained or unlawfully *detained the same.*" [Emphasis added.] This fundamental restriction is underscored by section 534.210, which states: "The merits of the title *shall in nowise be inquired into,* on any complaint which shall be exhibited by virtue of the provisions of this chapter." [Emphasis added.]

In light of the statutory limitations on the substantive scope of unlawful detainer actions, Missouri courts repeatedly have stated that equitable defenses and counterclaims are not permitted in response to such claims.

It is generally held that counterclaims are prohibited in unlawful detainer actions, regardless of the subject matter, unless permitted by statute. Missouri statutes do not permit the filing of counterclaims in unlawful detainer actions. The unlawful detainer statutes provide for summary relief and are an exclusive and special code. The sole issue is the immediate right of possession. Issues relating to title or matters of equity, such as mistake, estoppel and waiver, cannot be interposed as a defense.

*Broken Heart Venture, L.P. v. A & F Rest. Corp.,* 859 S.W.2d 282, 286 (Mo.App.1993) (citations omitted). *See also V.F.W. Post No. 7222 v. Summersville Saddle Club,* 788

---

6. The argument that the phrase "lawfully possessed," permits inquiry into the validity of the plaintiff's title was rejected long ago. *McCartney's Adm'x v. Alderson,* 45 Mo. 35, 38–39, 1869 WL 5094 (1869) (requirement that plaintiff be " 'lawfully possessed' [does

not] involve an inquiry into the lawfulness of the possession as regards title, but only in regard to the mode of obtaining it, and is equivalent to 'peaceably possessed' ") (citations omitted).

S.W.2d 796, 798 (Mo.App.1990) ("[c]ounterclaims are prohibited in unlawful detainer actions"); *Lake in the Woods Apartment v. Carson,* 651 S.W.2d 556, 558 (Mo.App. 1983) (counterclaim properly dismissed because "[i]ssues relating to title or matters of equity, such as mistake, estoppel and waiver, cannot be interposed as a defense" in unlawful detainer cases); *Wilson v. Teale,* 88 S.W.2d 422, 423 (Mo.App.1935) ("since the statute on unlawful detainer is a code unto itself, and the only question is whether possession of the land claimed to have been unlawfully held, it would seem, certainly if any equities are involved, the justice [of the peace] had no jurisdiction over the case sought to be raised in the counterclaim"); *Drzewiecki v. Stock–Daniel Hardware Co.,* 293 S.W. 441, 444 (Mo. App.1927) ("[q]uestions affecting title or matters of equity, such as a mistake, estoppel, or waiver, cannot be interposed as a defense. . . . by reason of the [unlawful detainer] statute"); *Porter v. Gibbs,* 242 S.W. 1016, 1017 (Mo.App.1922) ("unlawful detainer is a possessory action only, and no mere equitable rights or interests which defendants may have thought themselves entitled to can be considered herein").

Indeed, so often has this been said that it led some to conclude there was a specialized procedural limitation applicable to such actions, *i.e.,* the "no counterclaim rule." *See* Sweere, 68 J. Mo. B. at 164–65. This is incorrect. To be sure, chapter 534 contains procedures applicable only to unlawful detainer actions. *Gary Realty Co. v. Kelly,* 278 Mo. 450, 214 S.W.

92, 97 (1919) ("statutes providing for the practice and proceedings in forcible entry and detainer constitute a special and preclusive code [and are] not to be measured or determined by the ordinary rules and proceedings in civil cases"). This remains true, even though section 534.060 now provides that these procedures are to be augmented, in certain cases, by the procedures in chapter 517. But these procedural statutes have nothing to do with the limitations on the substantive scope of unlawful detainer actions referred to in the cases cited above.

Instead, those substantive limitations are found in sections 534.200 and 534.210, and they are the source of the prohibition against a defendant raising equitable defenses and/or challenges to the validity of the plaintiff's title in an unlawful detainer action. Thus, these limitations are substantive, not procedural, and they apply regardless of how the defendant attempts to raise such issues, *i.e.,* whether by affirmative defense, counterclaim, or otherwise. *See Beeler v. Cardwell,* 33 Mo. 84, 86 (1862) ("but the question of right does not at all arise in this action of forcible entry and detainer, and the defendants cannot *in any mode* set up their right as a defense for their forcible entry") (emphasis added). Accordingly, though cases came to refer to a prohibition on counterclaims or affirmative defenses, such references simply were a shorthand statement on the effect of the substantive limitations imposed by sections 534.200 and 534.210.[7]

---

**7.** Nor are these substantive limitations a result of the limitations on the jurisdiction of justices of the peace. Falling prey to the fallacy *post hoc ergo propter hoc,* some have concluded that, because unlawful detainer cases were required to be heard by such magistrates, their limited jurisdiction *must be the source* of the prohibition against raising equitable defenses and counterclaims in such actions. *See* Sweere, 68 J. Mo. B. at 164–65.

Scholars were not alone in thus mistaking effect for cause. *See, e.g., Finney v. Cist,* 34 Mo. 303, 309, 1863 WL 3000 (1863) (en banc) (rejecting defense to unlawful detainer as "an equitable right which a justice of the peace could not inquire into and give the relief" for). Yet, this logical misstep turns history—and the statutory language—on its head. The prohibition against challenging the validity of title (whether by affirmative defense, counter-

## IV. Statutory Limitations on the Scope of Unlawful Detainer Actions are NOT Unconstitutional

■ As explained above, statutory unlawful detainer actions do not, cannot, and never were intended to resolve questions of ownership or the validity of title. Instead, these actions resolve only the immediate right to possession and, then, only between the parties to the case. *Prendergast v. Graverman*, 166 Mo.App. 33, 147 S.W. 1094, 1096 (1912) ("[a]s has been decided in cases without number, the matter of title is of no moment whatever in actions of unlawful detainer—the disturbance is to the possession, and the case must be determined on the relative rights of possession between the parties"). The Smiths are not barred from raising equitable theories, claims of wrongful foreclosure, or other challenges to Wells Fargo's title. However, they are barred from trying to litigate such issues in response to Wells Fargo's limited action for possession under chapter 534. The Smiths must litigate these claims in a separate proceeding, just as they are doing now in their wrongful foreclosure lawsuit in Jefferson County. Moreover, nothing in chapter 534 prevented the Smiths from raising any or all of their claims *before* the foreclosure sale occurred in an action to enjoin the sale. Had they done so, and had the circuit court been convinced such an injunction was warranted, the Smiths could have maintained possession of their home while their claims were litigated.

claim, or otherwise) in an unlawful detainer action was developed centuries before the jurisdictional distinctions between Missouri's various trial courts. Thus, it was the substantive limitations which begat the use of justices of the peace, not *vice versa*. The requirement that unlawful detainer actions be brought before such magistrates, which was intended to ensure prompt hearings, was workable be-

### A. *Due Process*

■ In their first point, the Smiths claim that section 534.210 creates an "irrebuttable presumption that title is proven merely by filing an unlawful detainer[.]" (App. Br. at 21.) The Smiths claim this "irrebuttable presumption" violates state and federal "substantive due process" guarantees because it deprives them of fundamental rights under the "open courts" provision of the Missouri Constitution.

The Smiths' argument is based upon a flawed premise. Nothing in chapter 534 establishes an "irrebuttable presumption" that Wells Fargo's title is valid. To the contrary, section 534.210 provides that the validity of title is not relevant. Thus, not only was there no "irrebuttable presumption" that Wells Fargo's title to the Smiths' home is valid, there is nothing in the circuit court's judgment that suggests—or can be construed to declare—that the validity of Wells Fargo's title has been decided. *See Meier v. Thorpe*, 822 S.W.2d 556, 559 (Mo.App.1992) (trial court dismissed wrong foreclosure action on *res judicata* grounds resulting from prior unlawful detainer action—appellate court reversed because *"it was not possible* for the defendants in the first action [for unlawful detainer], appellants here, to have challenged the validity of the trustee's deed which the [respondents] received as a result of the foreclosure sale") (emphasis added). Instead, the judgment declares only that Wells Fargo's right to possess the property is superior to the Smiths'

cause the statute's substantive prohibitions ensured that the parties could not raise issues outside their jurisdiction. Accordingly, when article V, section 17, of the Missouri Constitution was amended in 1976, this had no impact on the language of sections 534.200 or 534.210, or the substantive limitations they impose.

possessory interest. Because the Smiths' first due process claim is premised upon an "irrebuttable presumption" in section 534.210 that does not exist, this claim is denied.

■ The Smiths also argue that section 534.210 violates procedural due process because its limitation on the scope of unlawful detainer actions deprived them of "property and liberty interests" without a meaningful hearing. The Smiths claim: "To the extent they prohibit inquiry into title, courts across Missouri are haphazardly expelling homeowners from their homes, including those homeowners who could demonstrate superior title." (App. Br. at 38.) First, this Court rejects the Smiths' assertion that Missouri's courts are acting "haphazardly" by enforcing the substantive limitations enacted by the elected branches of this government in sections 534.200 and 534.210.

■ Second, this argument again proceeds from a flawed premise that the outcome of an unlawful detainer action turns on which party is able to "demonstrate superior title." These actions are about possession, not title. Therefore, the *only* "property or liberty interest" of which the Smiths were deprived in this unlawful de-

tainer action was their right to possess a home that already had been foreclosed upon and sold to another in a public auction.[8] *McNeill v. McNeill,* 456 S.W.2d 800, 807 (Mo.App.1970) (because "the sole issue in any unlawful detainer action is the right of possession . . . . . it necessarily follows that any rights conferred upon plaintiffs or lost by defendants by reason of this action *are wholly possessory* ") (emphasis added).

As noted above, a due process challenge to the legislature's decision to separate actions concerning possession from actions concerning ownership or the validity of title seems doubtful in light of the fact that this separation was a fixture of the law centuries before the Missouri and federal constitutions (and their respective due process clauses) were penned. Thus, it was no surprise when the United States Supreme Court applied due process principles to this separation and found no cause for constitutional alarm.

In *Lindsey v. Normet,* 405 U.S. 56, 92 S.Ct. 862, 31 L.Ed.2d 36 (1972), the appellant challenged Oregon's unlawful detainer statute which allowed a landlord to recover possession if the tenant held over or violat-

---

8. The Smiths struggle to identify some "property or liberty interest" of which they have been deprived other than their ill-fated possessory claim. They claim that Wells Fargo "stigmatized" them by alleging the Smiths "unlawfully and wrongfully" possessed the property and "willfully" maintained this possession. Because section 534.210 deprived them of a fair opportunity to clear this "stigma" from their name, the Smiths contend this violated the "open courts" guarantee in the Missouri constitution. (App. Br. at 38–39.) This concatenation of concepts does not equate to a legitimate "liberty interest." No "stigma" of constitutional significance can attach to such arcane (not to mention truthful) allegations concerning possession. Nor were the Smiths harmed by section 534.210's prohibition against attacks on the validity of

Wells Fargo's title in an action where the validity of that title was not at issue. Therefore, the Smiths' frustrated desire to raise these issues in Wells Fargo's unlawful detainer action rather than in their own separate action is not something that is so "deeply rooted in the nation's history and tradition and implicit in the concept of ordered liberty . . . that *neither liberty nor justice would exist* if [it] were sacrificed." *State ex rel. Nixon v. Powell,* 167 S.W.3d 702, 705 (Mo. banc 2005) (emphasis added). Finally, section 534.210 does not violate the "open courts" provision of the state constitution because the legislature may impose reasonable restrictions on when and how certain claims may be raised. *Kilmer v. Mun,* 17 S.W.3d 545, 549–50 (Mo. banc 2000).

ed certain other lease covenants. The Supreme Court declared that due process was not offended by the summary nature of these proceedings or by the fact that the tenant was not permitted to raise legal or equitable challenges based upon the landlord's conduct. *Id.* at 65–66, 92 S.Ct. 862 ("tenant is not foreclosed from instituting his own action against the landlord and litigating his right to damages or other relief in that action").

Guided by no lesser light than Justice Holmes, *Lindsey* noted that actions which were limited to possession and that challenges to the validity of the claimant's title consistently had passed constitutional muster:

> The Court has twice held that it is permissible to **segregate an action for possession of property from other actions arising out of the same factual situation that may assert valid legal or equitable defenses or counterclaims.** In *Grant Timber & Mfg. Co. v. Gray*, 236 U.S. 133 [35 S.Ct. 279, 59 L.Ed. 501] (1915) (Holmes, J.), the Court upheld against due process attack a Louisiana procedure that provided that a defendant sued in a possessory action for real property could not bring an action to establish title or present equitable claims until after the possessory suit was brought to a conclusion. In *Bianchi v. Morales*, 262 U.S. 170 [43 S.Ct. 526, 67 L.Ed. 928] (1923) (Holmes, J.), the Court considered Puerto Rico's mortgage law which provided for summary foreclosure of a mortgage without allowing any defense except payment. The Court concluded that it was **permissible under the Due Process Clause to 'exclude all claims of ultimate right from possessory actions,'** *id.,* at 171 [43 S.Ct. 526], and to allow other **equitable defenses to be set up in a separate action** to annul the mortgage.

*Id.* at 67–68, 92 S.Ct. 862 (emphasis added).

Accordingly, the Smiths' procedural due process claims are denied under both the United States and Missouri constitutions. *See State ex rel. Houska v. Dickhaner*, 323 S.W.3d 29, 33 n. 4 (Mo. banc 2010) ("Missouri's Due Process Clause 'parallels its federal counterpart, and in the past this Court has treated the state and federal Due Process Clauses as equivalent.' ") (quoting *Jamison v. State Division of Family Services*, 218 S.W.3d 399, 405 (Mo. banc 2007)).

**B.** *Equal Protection*

The Smiths' second point asserts that section 534.210 violates state and federal equal protection guarantees. Again, this argument proceeds from the same flawed premise which dooms the due process arguments.

The Smiths contend that section 534.210 creates two classes: (1) plaintiffs who, like Wells Fargo, "are able to **conclusively establish title** by merely filing a petition," and (2) defendants who, like the Smiths, "upon being sued, are unable to challenge [their] Plaintiff's case, raise affirmative defenses or allege counterclaims." (App. Br. at 22 (emphasis added).) As repeatedly set forth above, section 534.210 does not permit the plaintiff to "establish title" at all, and it certainly does not permit a plaintiff "to conclusively establish title by merely filing a petition" as the Smiths contend. Because this premise is incorrect, the due process claim is denied.

Moreover, the decision to limit the substantive scope of unlawful detainer actions strictly to the question of possession does not violate equal protection protections. This limitation has been a part of unlawful detainer actions for nearly 900 years. These actions were—and still are—intended to allow possessory claims to be

resolved in expedited or summary proceedings, while leaving the comparatively complex questions of ownership or the validity of title (including claims to set aside, reform, or rescind transactions affecting such ownership or title) to be addressed in separate actions where full and fair litigation of such issues is possible. Again, the *Lindsey* decision is both dispositive of the federal constitutional question and persuasive as to breadth of Missouri's constitutional requirement of equal protection:

> [P]ossessory actions will offend the equal protection safeguard 'only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective,' *McGowan v. Maryland*, 366 U.S. 420, 425 [81 S.Ct. 1101, 6 L.Ed.2d 393] (1961), or if the objective itself is beyond the State's power to achieve, *Gomillion v. Lightfoot*, 364 U.S. 339, 81 S.Ct. 125, 5 L.Ed.2d 110 (1960).... It is readily apparent that *prompt as well as peaceful resolution of disputes over the right to possession of real property is the end sought* by the Oregon statute. It is also clear that the provisions for *early trial and simplification of issues are closely related to that purpose*.... Since the purpose of the Oregon Forcible Entry and Wrongful Detainer Statute is constitutionally permissible and since the classification under attack is rationally related to that purpose, the statute is not repugnant to the Equal Protection Clause of the Fourteenth Amendment.

*Lindsey*, 405 U.S. at 70–74, 92 S.Ct. 862 (emphasis added).

The purpose of Missouri's unlawful detainer action is the same, and the decision to pursue that purpose by enacting a summary procedure, and by requiring a defendant's challenges to the validity of the plaintiff's title (or other equitable defenses) to be pursued separately, is no less constitutional than the statutes at issue in *Lindsey* or the cases relied upon therein. *See Krevet*, 24 Mo. at 109–10 (the "principle on which this proceeding [for unlawful detainer] is founded is not novel; ... it prevailed in England and in sister states. That principle is, that persons shall not take the law into their own hands, but shall assert their rights by action in a peaceable manner, and not by force").

Accordingly, the Smiths' claim that section 534.210 violates state and federal equal protection guarantees is denied.

## V. Section 534.210 is NOT an Invalid Procedural Statute

In their third point, the Smiths contend that "Missouri Rules 55.32(a) and 55.08 are procedural in nature and therefore trump conflicting aspects of § 534.210 RSMo." (App. Br. at 23.) As with the constitutional arguments above, this argument fails because it proceeds from a false premise. Neither section 534.210 nor any other provision of chapter 534 precludes counterclaims or affirmative defenses as such. Instead, sections 534.200 and 534.210 impose substantive limitation on the issues that may be raised in an unlawful detainer action. A defendant may not violate these substantive limits regardless of whether the extraneous issues are raised by counterclaim, affirmative defense, or other procedural device.

Here, the Smiths sought to assert counterclaims seeking money damages for negligence, unjust enrichment, and breach of contract. The Smiths also sought declaratory judgments that Wells Fargo did not have valid title to the Smiths' home, that the foreclosure was invalid, and that Wells Fargo was not a bona fide purchaser for

value.[9] Not only would the Smiths' counterclaims have injected issues into this case that go well beyond the statutorily isolated question of possession, *see* section 534.200, those counterclaims directly challenged the validity of Wells Fargo's title and, therefore, violated section 534.210's unambiguous admonition that the *"merits of the title shall in nowise be inquired into*[.]" [Emphasis added.] This Court's procedural rules may "trump" procedural statutes as the Smiths contend, but article V, section 5 of the constitution does not give this Court power to alter, amend, or supersede substantive laws by procedural rule or otherwise.

Because there is no conflict between sections 534.200 and 534.210, which establish the *substantive* scope of unlawful detainer actions, and this Court's *procedural* rules regulating the use of counterclaims and affirmative defenses where they are otherwise substantively permitted, the argument that section 534.210 is superseded by this Court's rules of civil procedure is rejected.

## VI. Section 534.210 Does Not Prevent Challenges to Standing or Plaintiff's Status as the Real Party in Interest

 The Smiths' final point contends that section 534.210 prevents them from challenging Wells Fargo's "standing" to bring this action and/or its status as the "real party in interest." (App. Br. at 24.)

Again, this claim fails because it proceeds from a mistaken premise.

Nothing in section 534.210 prohibits the Smiths from challenging Wells Fargo's "standing" or attempting to prove it is not the "real party in interest." Instead, sections 534.200 and 534.210 prohibit the Smiths from attacking the merits of Wells Fargo's title. However, this prohibition applies to all attacks on the validity of the plaintiff's title, equitable or otherwise, and it applies regardless of whether the attack is made in the form of an affirmative defense, a counterclaim, or otherwise. *See Walker*, 182 S.W.3d at 269 (defendant cannot avoid prohibition of section 534.210 by characterizing a claim that plaintiff fraudulently obtained title as a challenge to plaintiff's "mode" of obtaining title). Thus, sections 534.200 and 534.210 prohibit challenges to the plaintiff's "standing" (or its status as the "real party in interest") only where those challenges are, in substance, attacks on the validity of the plaintiff's title. *State ex rel. Deutsche Bank Nat. Trust Co. v. Chamberlain*, 372 S.W.3d 24, 30 (Mo.App.2012) ("creatively framed 'standing' argument is indistinguishable from an equitable claim requiring inquiry into the merits of [plaintiff's] title").

The Smiths' challenges to Wells Fargo's "standing" and status as the "real party in interest" are merely re-packaged attacks on the validity of Wells Fargo's title. *(See*

9. The Smiths also sought a declaratory judgment that they have a constitutional "right to assert *applicable* affirmative defenses and counterclaims." (L.F. at 23 (emphasis added)). The Court rejects this fatally circular argument because, under section 534.210, the Smiths' counterclaims were not "applicable" to Wells Fargo's unlawful detainer action. Moreover, because the Smiths' constitutional challenges to section 534.210 have been carefully reviewed and rejected, the Smiths have received all the relief that a declaratory judgment might have provided. *See Fed. Nat.*

*Mortg. Ass'n v. Howlett*, 521 S.W.2d 428, 429 (Mo. banc 1975) (rejecting challenge to constitutionality of extrajudicial foreclosure statutes made in counterclaim to unlawful detainer action brought by foreclosure purchaser). We need not address Wells Fargo's claim that the Smiths failed to comply with Rule 87.04 because the Smiths appear to have given notice to the Attorney General of the constitutional claims asserted in their declaratory judgment counterclaim. *(See* App. Reply Br., at 7 (and affidavit provided in their Reply Appendix).)

App. Br. at 77 ("Wells Fargo would not have standing (and would not be the real party in interest) **unless it has good title to the house** in which the Smith family was living") (emphasis added).) This argument is simply wrong, as sections 534.200 and 534.210 plainly provide. Because the Smiths' "standing" and "real party in interest" claims merely are restatements of their attacks on the validity of Wells Fargo's title, the Smiths must raise these claims in a separate suit and not in response to an unlawful detainer action.

The history of unlawful detainer actions in Missouri and throughout the English common law, the plain language of Missouri's statutes, and the holdings of numerous Missouri cases provide both an unambiguous answer to the Smiths' ill-founded claims and clear guidance to homeowners in similar situations. Even where there may be latent defects in the foreclosure purchaser's title (or in the chain of interests preceding it) sufficient to support a claim that the purchaser's title is void, and even where there may be an adequate basis at law or equity to set aside the trustee's deed or the foreclosure sale which led to it, a foreclosure purchaser is entitled to bring an unlawful detainer action using the deed as evidence of the **fact** of the sale unless and until that deed has been declared void **in a proper action.** And, as sections 534.200 and 534.210 make clear, an unlawful detainer action is not a proper action in which to raise such issues. Thus, such claims must be raised in a separate matter.

■ As a result of this statutory limitation on the substantive scope of unlawful detainer actions, homeowners who believe their foreclosures are improper must act to protect themselves if they do not want to lose possession of their home. They must either: (1) sue to enjoin the foreclosure sale from occurring, or (2) if the sale has occurred and the buyer has sued for unlawful detainer, bring a separate action challenging the foreclosure purchaser's title and seek a stay of the unlawful detainer action in that separate case.

This is not new, and the foregoing options—as well as the risks of the approach taken by the Smiths—are well established. *See, e.g., Morris v. Davis,* 334 Mo. 411, 66 S.W.2d 883, 889 (1933) (unlawful detainer defendant who "relies and depends upon equitable defenses **must bring an original suit** before a chancellor [and,] upon proper pleadings, there may be made a determination of whatever legal rights the plaintiff in the unlawful detainer action may assert and of whatever equitable rights the defendant in that action may set up, with **injunctive relief against the further prosecution of the unlawful detainer action** pending the final disposition of the suit in equity") (emphasis added); *Ridgley v. Stillwell,* 28 Mo. 400, 404 (1859) (en banc) (if unlawful detainer defendant asserts an equitable defense, "his course was to have enjoined, in a court of competent jurisdiction, the proceedings [in the unlawful detainer case] until his equity could be determined"); *Vatterott v. Kay,* 672 S.W.2d 733, 735 (Mo.App.1984) (unlawful detainer defendant brought separate equitable action for specific performance, a stay of the unlawful detainer suit was granted, and the defendant later prevailed in the unlawful detainer case as a result of "the specific performance decree and the facts found therein").

## VII. Title Remains Relevant in Unlawful Detainer Actions

■ The central issue in an unlawful detainer case is possession, not title. Undoubtedly, the source of any confusion as to the relevance of title in actions brought by foreclosure sale purchases such as Wells Fargo is that such a plaintiff's proof

of its right to possession often will consist mainly of the deed it purchased at the foreclosure sale.

> Though we understand the potential tension between bare evidence of ownership affording an immediate right to possession through the summary remedy of unlawful detainer and equitable claims that ownership has been procured through an invalid or unlawful process, the legislature has drawn a bright line of demarcation between these concepts. Here, the trustee's deed evidences [plaintiff's] immediate right to possession, a right [plaintiff] is expressly permitted to enforce in an unlawful detainer action.

*Chamberlain,* 372 S.W.3d at 31.

■ However, in such cases, the foreclosure purchaser's right to possession is based upon the *fact* of the sale as demonstrated by the deed, not on the ultimate validity of the title that the deed reflects. Such use of title is merely an application of the long-standing principle that, even though a challenge to title may not be asserted in defense of an unlawful detainer action, title remains relevant and admissible "in so far as it may be necessary to show who is entitled to possession, as the right to possession is the question at issue." *Suedmeyer v. Meyer,* 237 S.W. 882, 883 (Mo.App.1922). *See also Hafner Mfg. Co. v. City of St. Louis,* 262 Mo. 621, 172

S.W. 28, 31 (Mo. banc 1914) ("title is not tried out as a determinative factor" but may be introduced where relevant to show the right of possession).

Therefore, unless a homeowner succeeds in preventing the foreclosure sale or in having the purchaser's unlawful detainer stayed, most unlawful detainer actions brought by foreclosure purchasers will be simple, swift, and difficult to contest.[10] *See* § 443.380 (recitals in trustee's deed "shall be received as prima facie evidence in all courts of the truth thereof"). However, this must be what was intended when the summary procedure for, and limitations on the substantive scope of, these actions first were enacted nearly two centuries ago. And, this must have been what was intended in the present circumstances when section 534.030.1 was amended in 1997 to allow foreclosure purchasers to sue the former owner for unlawful detainer.[11]

This is not to say that every unlawful detainer claim necessarily will succeed, however. It does not tax the judicial imagination to hypothesize cases in which the plaintiff's minimal burden of proving the superior right to possession can be defeated. *See, e.g., Pentz v. Kuester,* 41 Mo. 447, 449 (1867) ("[t]hough the tenant could not dispute the title of the landlord, nor set up a paramount title or an adverse possession against either the grantor or grantee, nor the court inquire into the

**10.** A fundamental aspect of the unlawful detainer action, both in the 12th century law courts and throughout its history in Missouri, has been the defendant's right to a jury trial. It has been argued that the application of summary judgment procedures to such claims deprives the defendant of this right. *See Truong,* 361 S.W.3d at 406 (Teitelman, C.J., dissenting). The Smiths do not raise this issue, however, and thus it must be left for another day.

**11.** Foreclosure purchasers always have been able to bring unlawful detainer actions where

the terms of the deed of trust created the necessary landlord-tenant relationship and provided that the prior owner was holding over past the lease term. *Minnesota Mut. Life Ins. Co. v. Fuhrman,* 521 S.W.2d 440, 441 (Mo.1975); *Sexton v. Hull,* 45 Mo.App. 339, 345 (1891). In 1997, however, section 534.030.1 was amended to allow foreclosure purchasers to proceed against former owners for unlawful detainer regardless of whether the former owner also qualifies as a holdover tenant.

matter of title in general, it was still competent for the defendant, under the statute, to show that the plaintiff's title and right of possession had been transferred to himself since the demise"); *Edwards v. Hoxworth,* 258 S.W.2d 15, 16 (Mo.App. 1953) (unlawful detainer defendant prevailed because, even though plaintiff had title to property, plaintiff's grantor earlier had given 10-year lease to defendant which had not expired).

▬ Here, the Smiths do not contest the fact that Wells Fargo is the purchaser named in the trustee's deed, nor could they. Instead, the Smiths attempted to argue that Wells Fargo's deed is invalid because the grantor was not the trustee named in the original deed of trust. However, this argument fails to raise a genuine issue of material fact regarding the Wells Fargo's right to possession.

▬ The Smiths' deed of trust explicitly permitted successor trustees and required that any such appointments be recorded in the same county as the deed of trust. The grantor on the deed Wells Fargo purchased in the foreclosure sale, which deed was entitled plainly as a "Successor Trustee's Deed Under Foreclosure," had been appointed pursuant to a document recorded in Jefferson County on October 20, 2005. (L.F. 563.) This document recites that the appointment was made by Wells Fargo as the successor in interest to Argent, the original lender.[12] Any objections the Smiths may have had regarding this appointment (or Wells Fargo's authority to make it) are far too late in coming now and, in any event, are foreclosed by the 2007 judgment. In the Smiths' 2011 lawsuit to reform the 2007 judgment, they sought to revive their ability to challenge Wells Fargo's status as the successor beneficiary under the deed of trust. The Smiths lost that claim. Their decision not to appeal that judgment closed the book on this issue, and it cannot be re-opened here.

Therefore, Wells Fargo's summary judgment motion, relying principally on the trustee's deed from the foreclosure sale, established each of the material facts necessary to establish its right to immediate possession of the property in this unlawful detainer action. Shorn of their many attacks on the validity of Wells Fargo's title, the Smiths' response to Wells Fargo's summary judgment motion failed to raise a genuine issue as to these material facts. Accordingly, summary judgment in favor of Wells Fargo was appropriate.

Rather than spending more than two years trying to raise wrongful foreclosure and other claims against Wells Fargo in this unlawful detainer action—where such claims plainly have no relevance and where they are, just as plainly, barred by section 534.210—the Smiths might have raised those claims in a separate action much earlier than they did and requested that the wrongful foreclosure court stay the unlawful detainer action until they were decided. Moreover, the Smiths might have raised their issues in a suit to enjoin the foreclosure sale altogether. Having done neither, the Smiths cannot contend that the outcome of Wells Fargo's unlawful detainer action is unfair or unexpected.

## VIII. Conclusion

The Court is not unaware of the marked increase in residential foreclosures, nor un-

12. It is well established that the assignee of a secured promissory note becomes, by that fact alone, the beneficiary of the deed of trust. *George v. Surkamp,* 336 Mo. 1, 76 S.W.2d 368, 371 (1934) ("sale and assignment of the se- cured note carries with it the deed of trust and that there is no need of or force to an assignment of the deed of trust ... itself separate and apart from the note").

moved by the policy arguments advanced both for and against the *status quo* regarding statutory unlawful detainer actions. However, these arguments are **policy** arguments. Therefore, they must be made to the legislative and executive branches of this government, which are constitutionally empowered to establish the public policy of this state and to enact laws in furtherance of such policies. It may be that the policies of severing possessory claims from claims challenging the validity of title, and of providing summary resolutions only for the former and not the latter, are as sound today as they were believed to be nearly two centuries ago when Missouri's territorial legislature adopted Missouri's first unlawful detainer statute. Or, it may be that changes in society, lending practices, and the globalization of residential loans and mortgages require that a new balance be struck between these competing interests.

In any event, it is for the Governor and the General Assembly—and not this Court—to judge the wisdom or fairness of chapter 534 in its current form. This Court's responsibility is to judge the constitutionality of these venerable statutes in light of the challenges raised in this case. Because section 534.21 is not unconstitutional, the circuit court did nor err in granting Wells Fargo's motion for summary judgment. The judgment is affirmed.

RUSSELL, BRECKENRIDGE, FISCHER, STITH and DRAPER, JJ., concur; TEITELMAN, C.J., dissents in separate opinion filed.

RICHARD B. TEITELMAN, Chief Justice.

The principal opinion holds that section 534.210 [1] does not violate due process. I respectfully dissent and would hold that section 534.210 violates due process by effectively rendering the defendant defenseless.

Section 534.210 provides that the "merits of the title shall in nowise be inquired into...." The practical impact is that the unlawful detainer defendant is prohibited from disputing the dispositive issue of title. A basic precept of due process is that one should have a reasonable opportunity to be heard. *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). The opportunity to be heard presupposes a right to be heard on those matters necessary to defend the legal rights at issue. The purpose of section 534.210 is to prohibit the unlawful detainer defendant from disputing the plaintiff's case or asserting his or her own proof of title, no matter how convincing and compelling that proof may be. This means that a bank or investor can evict an entire family from its home based on untested allegations. The homeowner can and will be heard, they just cannot say anything practically pertinent to the defense of their legal rights.

Wells Fargo notes that homeowners can fully protect their rights by simply filing a separate action contesting the validity of the alleged title. Conspicuously absent from this argument is any recognition of reality. In reality, homeowners facing an unlawful detainer action are highly unlikely to have the financial means to bear the legal costs of a separate action or, for that matter, any action at all. There are the legal fees. There are the double damages owed to the plaintiff pursuant to section 534.330. There is the bond in amount of the double damages and lost rents. *Section 534.380.* In short, there is no way that a financially distressed homeowner

**1.** Unless otherwise noted, all statutory references are to RSMo Supp.2012.

can bear the costs and delay of separately litigating an issue that should be the plaintiff's burden to prove fully in the first place. The process is streamlined and efficient largely because, in practice, the defendant's voice is silenced. Further, even if a homeowner was successful in challenging the underlying foreclosure, it is too late. The home has been sold. The failure to recognize these basic facts prevents a realistic and accurate assessment of the processes employed in unlawful detainer actions.